**AFFIRM; and Opinion Filed January 10, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01099-CV

### RAYMUNDO RICO, JR., Appellant
### V.
### L-3 COMMUNICATIONS CORPORATION AND MEGAN RIDGE, Appellees

**On Appeal from the 354th Judicial District Court**
**Hunt County, Texas**
**Trial Court Cause No. 73537**

## OPINION

Before Justices Bridges, Lang, and Fillmore
Opinion by Justice Fillmore

Raymundo Rico, Jr. appeals the trial court's grant of summary judgment in favor of L-3 Communications Corporation (L-3) and Megan Ridge. In six issues, Rico asserts the trial court erred by granting summary judgment on Rico's claims for intentional infliction of emotional distress and for malicious prosecution because (1) he provided sufficient evidence to support all elements of each cause of action and to enable a rational jury to infer that L-3 could be held liable for Ridge's conduct based on the doctrines of *respondeat superior* and ratification, (2) the two claims are alternative claims and are not mutually exclusive, and (3) appellees intentionally destroyed evidence. We affirm the trial court's judgment.

**Background**

On September 18, 1998, Rico was hired as an aircraft maintenance operator at L-3's Greenville facility. In June 2006, L-3 hired Ridge as a production support trainee at the same facility. L-3's Greenville facility is composed of a number of different buildings, referred to as "bays" or "hangars," and L-3's employees are generally assigned to work in a specific bay or hangar. On November 8, 2006, Rico was assigned to work from 6:00 p.m. to 6:00 a.m. on an aircraft located in Bay 1 of Hangar 102 while Ridge was assigned to work from 4:00 p.m. until 12:00 a.m. as the tool crib attendant in the tool crib located in Hangar 150.

A "tool crib" is a small, enclosed area within an open hangar where specialty tools are kept. A tool crib attendant is assigned to remain in the tool crib and distribute requested tools to other employees. Access to the tool crib is generally restricted to the tool crib attendant. However, the tool crib attendant may allow another employee to enter the tool crib to choose specific tools, including a bucking bar, needed for the employee's work.[1] Within each hangar at the L-3 facility are one or more tool cribs. If the tool crib in a hangar did not have the specific tool needed by an employee, the employee would attempt to locate the tool in a tool crib located in another hangar.

When Rico arrived at work on November 8, 2006, he entered the L-3 facility through the security turnstile south of Hangar 150. Once inside the facility, Rico obtained an L-3 vehicle and drove toward Hangar 2, where he would get his work assignment. In transit, he saw Ridge walking toward Hangar 150. Due to the size of the L-3 facility, it was common for L-3 employees to offer rides to one another. Ridge accepted a ride from Rico but, because she was talking on her cellphone, the two did not speak. Rico turned around, drove Ridge to Hangar 150, and then drove to Hangar 2.

---

[1] A bucking bar is a tool used to buck rivets and to straighten metal.

At approximately 9:00 p.m., Rico left Hangar 102 to meet his wife at the security turnstile by Hangar 150 to get his lunch. Rico also needed some supplies for his work that were not available in his work area and decided to obtain the supplies from Hangar 150. When he entered Hangar 150, Rico saw an aircraft on which he had previously worked. Rico went into the aircraft to observe the status of the work and to talk to a friend who was working on the plane. Rico's friend, B.J. Lucky, was not working that night, and Rico did not recognize any of the individuals working on the plane.

Rico left the aircraft and proceeded toward the "free stock" area located near the tool crib to obtain the supplies he needed. As he passed the tool crib, Ridge opened the window and asked if he needed anything. Rico introduced himself to Ridge, and they talked for ten or fifteen minutes. Ridge and Rico both described their conversation as cordial or friendly. Rico then retrieved the supplies he needed and returned to Hangar 102.

According to Ridge, later that night, Rico returned to Hangar 150 and requested a bucking bar from the tool crib. Ridge opened the door to the tool crib to allow Rico to retrieve the bucking bar. According to Ridge, Rico then put his arm across her throat, pushed her against the wall of the tool crib, broke her belt, and put his hand down her pants and into her vagina. According to Ridge, during the assault, Rico appeared startled by a sound. He then told her they "could continue this at any time" and left the tool crib.

James Brown was working on the aircraft in Hangar 150 and saw Rico on the aircraft when Rico asked for "B.J." Brown later saw Rico at the tool crib. Approximately ten minutes later, Brown saw Rico leave the hangar. Brown went to the tool crib and found Ridge crying. There was conflicting evidence about whether Ridge told Brown that she had been sexually assaulted by Rico or whether, after Ridge told her roommate about the assault, Ridge's roommate told Brown. However, the next day, Brown reported the assault to L-3 management.

–3–

When Ridge arrived at work the next day, Roger Lasater, the Senior Human Resources Manager at the facility, requested that she meet with him. During the meeting, Ridge wrote a statement about the incident. Lasater then showed Ridge a photograph of Rico. Ridge could not identify Rico because the photograph was grainy and unclear. At Ridge's request, Lasater provided her with a clearer photograph of Rico, and Ridge then identified him as the assailant. When Rico arrived at work, he was requested to meet with Lasater and Jack Russell, another L-3 employee. At some point, Rico's union representative joined the meeting. Rico gave a written statement denying the alleged assault and was suspended pending L-3's investigation of the incident. Lasater investigated Ridge's allegations by interviewing employees who were either in or around the hangar when the assault took place or who might otherwise have information that could assist the investigation, checking the "badge readers" and turnstile records, and reviewing all video surveillance. Based on the information obtained by Lasater, L-3 terminated Rico's employment.

Ridge also reported the alleged assault to the Greenville Police Department. The police interviewed Lasater and two other members of L-3's management, Ridge, and Brown and, on a later date, Ridge's roommate. Ridge initially declined to pursue charges, but later decided to do so. Ridge provided the police with a written statement and identified Rico from a photographic lineup prepared by the police.

After a jury acquitted Rico of the charge he sexually assaulted Ridge, he sued L-3 and Ridge for intentional infliction of emotional distress. L-3 and Ridge filed a hybrid motion seeking summary judgment on both no-evidence and traditional grounds. Rico amended his petition to assert an additional claim against L-3 and Ridge for malicious prosecution. L-3 and Ridge filed a second hybrid motion for summary judgment on the malicious prosecution claim.

–4–

The trial court granted summary judgment in favor of L-3 and Ridge on both claims without specifying the basis for the ruling.

*Spoliation*

In his sixth issue, Rico argues the trial court erred by granting summary judgment in favor of L-3 and Ridge because they failed to provide through discovery either the surveillance tapes of the facility or the names of the persons who reviewed the tapes. Rico raised the issue of spoliation of evidence in response to both of L-3 and Ridge's motions for summary judgment.

An allegation of spoliation does not give rise to an independent cause of action. *Trevino v. Ortega*, 969 S.W.2d 950, 952–53 (Tex. 1998). Rather, spoliation is a remedy for improper conduct in the discovery context that "should properly be rectified within the context of the lawsuit." *Offshore Pipelines, Inc. v. Schooley*, 984 S.W.2d 654, 666 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (citing *Trevino*, 969 S.W.2d at 951). A party who establishes that spoliation has occurred may be entitled to a presumption that the destroyed evidence would not have been favorable to its destroyer. *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 721–22 (Tex. 2003); *Buckeye Ret. Co. LLC, Ltd. v. Bank of Am., N.A.*, 239 S.W.3d 394, 401 (Tex. App.—Dallas 2007, no pet.). Such a presumption is appropriate when a party has deliberately destroyed evidence or has failed to either produce or explain the evidence's nonproduction. *Johnson*, 106 S.W.3d at 721–22; *MRT, Inc. v. Vounckx*, 299 S.W.3d 500, 510 (Tex. App.—Dallas 2009, no pet.). In determining whether a spoliation presumption is justified, a trial court considers whether: (1) there was a duty to preserve the evidence; (2) the alleged spoliator breached this duty; and (3) the spoliation prejudiced the non-spoliator's ability to present its case or defense. *Trevino*, 969 S.W.2d at 954–55 (Baker, J., concurring); *Buckeye Ret. Co. LLC, Ltd.*, 239 S.W.3d at 401.

Because Rico raised the issue of his entitlement to a spoliation presumption in his responses to L-3 and Ridge's motions for summary judgment, and the trial court nevertheless granted a summary judgment, we presume the trial court considered and rejected the request for a presumption. *Mangham v. YMCA of Austin, Tex.-Hays Communities*, 408 S.W.3d 923, 930 (Tex. App.—Austin 2013, no pet.); *Clark v. Randalls Food*, 317 S.W.3d 351, 356 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).[2] Therefore, our review of the trial court's grant of summary judgment is slightly modified. *Adobe Land Corp. v. Griffin, L.L.C.*, 236 S.W.3d 351, 357 (Tex. App.—Fort Worth 2007, pet denied). First, we review the denial of a spoliation presumption for an abuse of discretion. *Trevino*, 969 S.W.2d at 953; *Mangham*, 408 S.W.3d at 931. Second, if we conclude the trial court did not abuse its discretion by denying the spoliation finding, we proceed under the traditional standards of review for a summary judgment to determine whether, without the presumption, the movant was entitled to summary judgment. *Clark*, 317 S.W.3d at 356; *Adobe Land Corp.*, 236 S.W.3d at 357. A trial court abuses its discretion if its refusal to apply the presumption was arbitrary or unreasonable. *Mangham*, 408 S.W.3d at 931; *Adobe Land Corp.*, 236 S.W.3d at 357.

The initial inquiry into whether a party is entitled to a presumption based on spoliation is the issue of duty. *Johnson*, 106 S.W.3d at 722. "Before any failure to produce material evidence may be viewed as discovery abuse, the opposing party must establish that the non-producing party had a duty to preserve the evidence in question." *Id.* The duty to preserve evidence does not arise unless a party knows or reasonably should know there is a substantial chance a claim will be filed and that evidence within its possession or control will be material and relevant to that claim. *Johnson*, 106 S.W.3d at 722; *Clark*, 317 S.W.3d at 356–57.

---

[2] *See also Anderson v. TU Elec.*, No. 05-99-01255-CV, 2000 WL 567045, at *3 (Tex. App.—Dallas May 3, 2000, no pet.) (not designated for publication).

Rico had the burden to show that L-3 or Ridge had a duty to preserve any videotapes and breached that duty by disposing of or destroying any videotapes after they knew, or should have known, that there was a substantial chance there would be litigation and that the evidence would be material and relevant to it. *See Johnson*, 106 S.W.3d at 722; *Trevino*, 969 S.W.2d at 954–55 (Baker, J., concurring). However, Rico offered no evidence that he requested L-3 to produce any videotapes, L-3 refused to produce any videotapes, or that any videotapes had been disposed of or destroyed. Rather, in raising the issue of spoliation in his responses to L-3 and Ridge's motions for summary judgment, Rico directed the trial court to an interrogatory served on Ridge inquiring as to results of any investigation of Ridge's allegations including "a copy of the report, recordings, video, and audio and if they do not exist, when were they destroyed?" Ridge objected to the interrogatory on a number of grounds, including that it sought information or documents that were not in her possession and control and that interrogatories were not the appropriate forum for a request for documents. Ridge did not provide a substantive response to Rico's request for "videos" or information about when any "video" was destroyed, and the record does not reflect Rico sought to compel Ridge to do so. *See Roberts v. Whitfill*, 191 S.W.3d 348, 361 (Tex. App.—Waco 2006, no pet.) (noting concern with giving spoliation instruction because plaintiff "did not pursue her motion to compel and obtain an order requiring [defendant] to produce" data that was the subject of instruction); *see also Remington Arms Co. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993) ("the failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct").

We conclude Rico failed to establish in his responses to L-3 and Ridge's motions for summary judgment that either L-3 or Ridge breached a duty to produce any videotapes.

Accordingly, the trial court did not abuse its discretion by impliedly overruling Rico's request for a spoliation presumption. We resolve Rico's sixth issue against him.

**Summary Judgment**

In his first five issues, Rico challenges the trial court's grant of a no-evidence or traditional summary judgment in favor of L-3 and Ridge. We review the grant of summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). The standards of review for traditional and no-evidence summary judgment are well known. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). With respect to a traditional motion for summary judgment, the movant has the burden to demonstrate that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49. We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. TEX. R. CIV. P. 166a(i); *Gish*, 286 S.W.3d at 310. To defeat a no-evidence summary judgment, the nonmovant is required to produce evidence that raises a genuine issue of material fact on each challenged element of its claim. *Gish*, 286 S.W.3d at 310; *see also* TEX. R. CIV. P. 166a(i).

In reviewing both a traditional and no-evidence summary judgment, we consider the evidence in the light most favorable to the nonmovant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Gish*, 286 S.W.3d at 310.

When a party files a hybrid summary judgment motion on both no-evidence and traditional grounds, we first review the trial court's judgment under the no-evidence standard of

review. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Gillespie v. Kroger Tex., L.P.*, No. 05-12-00652-CV, 2013 WL 5773290, at *2 (Tex. App.—Dallas Oct. 25, 2013, no pet. h.). Should we determine summary judgment was appropriate under the no-evidence standard, we need not address issues related to the traditional summary judgment motion. *Ridgway*, 135 S.W.3d at 600; *Mangham*, 408 S.W.3d at 926.

*Malicious Prosecution*

Rico argues generally in his first issue that the trial court erred by granting summary judgment in favor of L-3 and Ridge. In his third issue, Rico contends the trial court erred by granting summary judgment on his malicious prosecution claim because he provided sufficient evidence to support each element of that cause of action.

A person subjected unjustifiably to criminal proceedings may have a cause of action for malicious prosecution. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 792 (Tex. 2006). However, the "cause of action must sometimes yield to society's greater interest in encouraging citizens to report crimes, real or perceived." *Id.* Reflecting this balance, in order to prevail on a malicious prosecution claim, a plaintiff must prove: (1) a criminal prosecution was commenced against him; (2) the defendant initiated or procured that prosecution; (3) the prosecution terminated in his favor; (4) he was innocent of the charges; (5) the defendant lacked probable cause to initiate the prosecution; (6) the defendant acted with malice; and (7) he suffered damages. *Id.* at 792 & n.3. L-3 and Ridge asserted Rico had no evidence of elements (2), (4), (5), and (6).

Probable cause is "the existence of such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor [complainant], that the person charged was guilty of the crime for which he was prosecuted." *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997) (quoting *Akin v. Dahl*, 661 S.W.2d 917, 921

(Tex. 1983)). "The probable cause element 'asks whether a reasonable person would believe that a crime had been committed given the facts as the complainant honestly and reasonably believed them to be before the criminal proceedings were instituted.'" *Suberu*, 216 S.W.3d at 792–93 (quoting *Richey*, 952 S.W.2d at 517).

Because malicious prosecution actions involve a delicate balance between society's interest in the efficient enforcement of the criminal law and the individual's interest in freedom from unjustifiable and oppressive criminal prosecution, there is an initial presumption that the defendant acted reasonably and in good faith and had probable cause to initiate criminal proceedings. *Id.* at 793; *Richey*, 952 S.W.2d at 517. In order to rebut this presumption, the plaintiff "must produce evidence that the motives, grounds, beliefs, or other information upon which the defendant acted did not constitute probable cause." *Suberu*, 216 S.W.3d at 793; *see also Richey*, 952 S.W.2d at 518. The burden then shifts to the defendant to offer proof of probable cause. *Richey*, 952 S.W.2d at 518.

Ridge stated she reported the assault to the police. Rico, relying on a police report that states the officer, after arriving at the L-3 facility, spoke with Lasater and other members of L-3 management, contends L-3 reported the assault to the police. However, regardless of whether L-3 or Ridge reported the assault, the law presumes they honestly and reasonably acted on the information available to them in reporting Rico to the police. *Suberu*, 216 S.W.3d at 794. Rico was required to rebut this presumption by producing evidence that L-3 or Ridge initiated the prosecution "on the basis of information or motives that do not support a reasonable belief" that Rico was guilty of sexually assaulting Ridge. *Id.* at 794–95.

Rico argues Ridge's failure to report the assault immediately after it allegedly occurred and failure to seek medical treatment raise an inference the assault did not occur. However, Rico produced no summary judgment evidence that Ridge was not assaulted or that the victim of a

sexual assault always reports it immediately.[3] Rather, the only summary judgment evidence about the assault is Ridge's statement given to Lasater and her affidavits filed in this case describing the assault. Further, Ridge told her roommate about the assault on the same day it occurred, and Brown's statement that he saw Ridge crying shortly after Rico left the hangar supports Ridge's statement the assault occurred. After Brown reported the assault to Lasater, Ridge told Lasater about the assault and reported the assault to the police. Ridge identified Rico as her assailant to both Lasater and the police.

Texas public policy is to encourage "citizens to report crimes, real or perceived." *Suberu*, 216 S.W.3d at 792. This "strong public policy in favor of exposing crime" means individuals who report crimes cannot be held liable unless it is proven they reported the crime with malicious intent. *Smith v. Sneed*, 938 S.W.2d 181, 184 (Tex. App.—Austin 1997, no writ). Here, Rico produced no evidence that L-3 or Ridge had any prior bad relations, animus, or private motivation to harm him. *See Suberu*, 216 S.W.3d at 795. Rico had never met Ridge prior to November 8, 2006 and described their interactions on that date as cordial. Rico stated that he had never been disciplined by L-3, and there was no evidence that L-3 had any basis for terminating Rico other than Ridge's complaint. There is no evidence that anyone in L-3 management had any racial animus or other improper motive for reporting Rico to the police. There is no evidence Lasater or any other member of L-3 management engaged in discussion with Ridge about Rico prior to her allegation that Rico sexually assaulted her. Further, Brown, not Ridge, reported the incident to L-3 management. Although the critical question was L-3's and Ridge's state of mind, Rico produced no evidence that either L-3 or Ridge contacted the

---

[3] Rico also asserts, without substantive argument, that L-3 and Ridge had no probable cause to believe Rico committed the assault. However, "[u]nless there is evidence rebutting the presumption of probable cause, a prosecution resulting from eyewitness identifications that turn out to be incorrect or, at least, insufficient to warrant a conviction, does not satisfy the exacting requirements for a plaintiff to prevail in a malicious prosecution case." *Suberu*, 216 S.W.3d at 795.

–11–

police on the basis of something other than a reasonable belief that Rico was guilty of sexually assaulting Ridge. *Id.* at 795.

We conclude Rico produced no evidence that either L-3 or Ridge lacked probable cause to initiate the prosecution. Accordingly, we need not consider whether Rico produced more than a scintilla of evidence on any other element of his malicious prosecution claim. *See French v. French*, 385 S.W.3d 61, 69 n.2 (Tex. App.—Waco 2012, pet. denied). We resolve Rico's first issue, to the extent it relates to his claim for malicious prosecution, and his third issue against him.

*Intentional Infliction of Emotional Distress*

In his first issue, Rico generally challenges the trial court's grant of summary judgment in favor of L-3 and Ridge and, in his fourth issue, asserts the trial court erred by granting summary judgment on his intentional infliction of emotional distress claim because he provided sufficient evidence to support all elements of the claim.

Intentional infliction of emotional distress is a "gap-filler tort," judicially created to allow recovery in rare instances where severe emotional distress is inflicted in such an unusual manner there are no other recognized theories of redress. *See Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004); *Hairston v. S. Methodist Univ.*, No. 05-11-00860-CV, 2013 WL 1803549, at *3 (Tex. App.—Dallas Apr. 30, 2013, pet. denied). To prevail on this claim, Rico must establish that: (1) L-3 or Ridge acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the conduct caused his emotional distress; and (4) the emotional distress was severe. *See Suberu*, 216 S.W.3d at 796; *Hairston*, 2013 WL 1803549, at *3. L-3 and Ridge sought a no-evidence summary judgment on grounds Rico had no evidence of elements (1), (2) and (4).

Conduct is extreme and outrageous only if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Suberu*, 216 S.W.3d at 796 (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)). An action that is intentional, malicious, or even criminal does not, standing alone, mean that it is extreme or outrageous for purposes of intentional infliction of emotional distress. *Brewerton v. Dalrymple*, 997 S.W.2d 212, 215–16 (Tex. 1999); *see also Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 817 (Tex. 2005). Meritorious claims for intentional infliction of emotional distress are rare because "most human conduct, even that which causes injury to others, cannot be fairly characterized as extreme and outrageous." *Suberu*, 216 S.W.3d at 796.

Rico argues that L-3's and Ridge's conduct was extreme and outrageous because they intentionally provided false information to the police. However, although Rico denied committing the assault, there is no summary judgment evidence that Ridge did not honestly believe that she had been assaulted and that Rico was her assailant. Rico's claimed innocence, by itself, is insufficient to establish that L-3 or Ridge did not honestly and reasonably believe that Rico was guilty. *See id*. Further, as noted above, Rico produced no evidence of any prior bad relations he had with either L-3 or Ridge, no evidence of racial animus by either L-3 or Ridge, and no evidence of other ulterior motives that L-3 or Ridge might have had in reporting Rico to the police. *See id.* There is no evidence that either L-3 or Ridge subjected Rico to distress knowing he was innocent. *See id.* at 796–97. We conclude Rico produced no evidence that either L-3's or Ridge's conduct was extreme or outrageous.

Because Rico produced no evidence that L-3's or Ridge's conduct was extreme or outrageous, we need not consider whether Rico produced more than a scintilla of evidence on any other element of his claim for intentional infliction of emotional distress. *See Colson v.*

*Grohman*, 24 S.W.3d 414, 422 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (noting one basis for affirming summary judgment on claim for intentional infliction of emotional distress was that evidence did not establish conduct was extreme and outrageous). We resolve Rico's first issue, to the extent it relates to his claim for intentional infliction of emotional distress, and his fourth issue against him.

Having concluded the trial court properly rendered judgment based on L-3 and Ridge's no-evidence motions for summary judgment, we need not address Rico's challenges to L-3 and Ridge's traditional motions for summary judgment. *See Ridgeway*, 135 S.W.3d at 600. Further, based on our resolution of Rico's first, third, and fourth issues, we need not address Rico's second issue, relating to whether his claims for malicious prosecution and intentional infliction of emotional distress are mutually exclusive, or his fifth issue, relating to whether L-3 is liable for Ridge's actions under the doctrines of *respondeat superior* and ratification. *See* TEX. R. APP. P. 47.1.

The trial court's judgment is affirmed.


/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE


121099F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RAYMUNDO RICO, JR., Appellant

No. 05-12-01099-CV      V.

L-3 COMMUNICATIONS
CORPORATION AND MEGAN RIDGE,
Appellees

On Appeal from the 354th Judicial District
Court, Hunt County, Texas,
Trial Court Cause No. 73537.
Opinion delivered by Justice Fillmore,
Justices Bridges and Lang participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees L-3 Communications Corporation and Megan Ridge recover their costs of this appeal from appellant Raymundo Rico, Jr.


Judgment entered this 10th day of January, 2014.


/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE