**AFFIRM; Opinion Filed February 18, 2020**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01542-CV

### SANDRA BEASLEY, Appellant
### V.
### WAL-MART STORES, INC., Appellee

**On Appeal from the 86th Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 98406-86**

## MEMORANDUM OPINION
Before Justices Myers, Schenck, and Carlyle
Opinion by Justice Carlyle

This is a slip-and-fall case. In two issues, appellant Sandra Beasley contends the trial court erred by denying her request for a spoliation presumption and granting appellee Wal-Mart's motion for summary judgment on her premises liability claim. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

**Background**

In her petition, Ms. Beasley asserted that while shopping in a Wal-Mart store's pharmacy department on November 4, 2016, she "slipped on water that was on the flooring causing severe and incapacitating injury" to her left knee. According to her petition, (1) Wal-Mart "was guilty of maintaining a dangerous premises and for failing to properly inspect the premises," "failed to warn

[her] of the dangerous condition on the premises," and "had actual and/or constructive notice of the dangerous condition," and (2) Wal-Mart's acts or omissions constituted negligence that proximately caused her injury. She claimed actual damages "in excess of $30,000.00" and an additional $40,000.00 in damages for "physical pain and suffering and mental anguish."

Wal-Mart filed a general denial answer and, following discovery, moved for traditional and no-evidence summary judgment. In its summary judgment motion, Wal-Mart contended Ms. Beasley's premises liability claim "fails as a matter of law" because (1) Wal-Mart "had neither actual nor constructive knowledge of any clear liquid substance allegedly left on the floor before [Ms. Beasley's] fall" and (2) at the time of the incident, Ms. Beasley was scheduled to undergo surgery to repair a torn meniscus in her left knee from a fall that occurred two months earlier and she "has provided no expert and medical opinion that agrees or explains her assertion that the slip at Wal-Mart increased or amplified her pre-existing condition of a torn meniscus in her left knee."

The appendix to Wal-Mart's summary judgment motion included (1) a June 18, 2018 affidavit of the store's "asset protection manager," John Strachan[1]; (2) a November 4, 2016 "Witness Statement" handwritten by Wal-Mart customer Sandy Greenhaw on a Wal-Mart form[2];

---

[1] Mr. Strachan testified in his affidavit:

> Based upon my investigation of this incident, including my review of the underlying records, witness statement from customer Sandy Greenhaw and Sandra Beasley, and incident reports kept in the regular course of business, there is no evidence of who caused the liquid to be on the floor in the cold and flu aisle, how the liquid came to be on the ground, how long the liquid had been on the ground prior to Ms. Beasley's alleged fall, or whether any person, employee, or representative of Wal-Mart store #265 could have reasonably discovered the liquid before the alleged fall. Likewise, there is no way to determine whether the liquid was on the ground and detectable by an employee in the area prior to the alleged fall.

[2] Ms. Greenhaw wrote in her witness statement:

> I was talking to the pharmacist at the Drop off window the lady walked up behind myself and my Dad and wanted someone to call to have the floor mopped, she stated she twisted her knee. Myself, my Dad and the pharmacist did not see anyone fall and we heard no noise of anyone hitting the floor or any sounds from her.

Ms. Greenhaw also marked "No" in response to the form's question, "Were there any physical signs of injury?"

(3) a November 4, 2016 Wal-Mart "Customer Incident Report" signed by Ms. Beasley[3];

(4) excerpts from depositions of Ms. Beasley[4] and Ms. Greenhaw[5] in this case; and (5) Ms. Beasley's medical records.[6]

---

[3] On the "Customer Incident Report," information was handwritten on the form's lines for "Legal Name," "Physical Address," "Date of Birth," "Contact Phone," and "SSN*." Below the "SSN*" line, the form stated, "*SSN is required for an insurance claim. If SSN is not provided at this time, please note that you will be required to provide your SSN if a claim is made for medical payment." The handwritten description of the reported incident stated:

> Was standing Pharmacy Isle. Turned to my right to leave and slipped on water spill. I had not seen it. My husband caught my hand and kept me from falling all the way to floor. Twisted my knee.

[4] Ms. Beasley testified in her deposition:

> Q. What color of liquid was it?
>
> A. From what I could tell, it was just a clearish liquid. When I wiped my arm off, it was some dirt and clear stuff. It looked like water probably and dirt and junk that was on the floor. The manager brought me paper towels and I wiped off my shoe, and there was grime on there and what looked to be like water.
> . . . .
> Q. So you didn't see it?
>
> A. No.
> . . . .
> Q. Right before the incident and during the incident, did you see any Wal-Mart employee nearby?
>
> A. There was a pharmacy tech at her window. She was behind the window. The lady that came over to help the manager later had passed just right behind me. Because I was standing there at the corner, and she had just gone right behind me. I think she was helping a customer because she picked up something off the thing and said, I think this is it. I'm assuming she was talking to a customer. I don't know. And another employee passed but going the other direction. They didn't even look where he was. They were going from one side of the store to another.
>
> Q. So really nobody could have seen this clear—
>
> A. I don't know. Like I said, the lights reflect. I couldn't see it because when I parked there waiting for my husband, I had the buggy there. So I didn't see anything. And when I saw he was having a hard time getting back up, I pushed my buggy and when I did, my next step landed in the liquid. Before I put my buggy on top of it, could somebody else have seen it? Quite possibly.
> . . . .
> Q. How do you think that liquid happened to be there?
> . . . .
> A. I have no way of knowing. There is tons of customers, there is employees, there is stuff. There is kids. There is no way of knowing how it got there. There was not like a container anywhere close that I could see.

[5] Ms. Greenhaw stated in her deposition:

> Q. . . . When you walked up to the pharmacist, when you walked up to the window, do you recall seeing any water or substances on the floor?
>
> A. No.
>
> Q. And how long were you standing at the window?
>
> A. Quite a while. I don't remember the exact time, but quite a while, at least 30 minutes or longer.
> . . . .
> Q. Okay. You could see the aisle where [Ms. Beasley] said she fell?
>
> A. Uh-huh.
>
> Q. Is that a "yes"?
>
> A. Yes. Sorry.
>
> Q. . . . And then you could see where she was pointing at the time where she claimed the water was, but you didn't see water? Is that what you—
>
> A. Correct.
>
> Q. Okay. Do you recall ever seeing an employee of Walmart bring a mop or a mop bucket?

In her summary judgment response, Ms. Beasley argued she "testified in her deposition that the Defendant had employees in the immediate area of her fall and in fact they both could have seen the liquid substance on the floor"; she "did not see the liquid being spilled while she was in line which leads her to believe that the liquid had been there prior to her fall"; and her medical records "show additional complaints of pain and injury to [her] knee as a result of her fall at Wal-Mart." She also asserted spoliation, contending she requested video evidence in her original petition and "the response received was that no such video exists"; materials obtained through discovery indicate Strachan copied video relating to this incident before the original footage was automatically erased by Wal-Mart's surveillance system, but the video was not produced; and, because Wal-Mart "has violated its duty to safeguard evidence which it reasonably knew to be material to this cause of action," the trial court should "hold an adverse inference with regard to the evidence that is either missing or destroyed thus creating a fact issue precluding the granting of a summary judgment." The evidence attached to Ms. Beasley's summary judgment response included a November 11, 2016 Wal-Mart "Video Request Form: Customer Accident/Incident"[7] signed by Mr. Strachan and excerpts from Mr. Strachan's September 25, 2018 deposition in this case.[8]

---

A. Yes.

Q. Okay. Do you recall seeing that person mop?

. . . .

A. No, because there was nothing there. I turned around; and when they brought the mop bucket up, the guy was like, "Where do I mop?"

. . . .

Q. Okay. And with regard to this form that you completed, did you—did someone ask you to complete this form?

A. They—The lady at the pharmacy, at the drop-off window, asked me if I saw anything, and I told her no. And there was some managers that come up and they asked me, and I told them no. I saw the girl sit down on a bench at the pharmacy. They brought her an ice pack. And I don't remember if it was for her knee or whatever, but they brought her an ice pack. And then at that point, I left. The only thing they asked me, would—would I just write down what I saw. And I told them, you know, I didn't see her fall or anything, so that's what I recorded.

[6] Ms. Beasley's November 4, 2016 medical records stated in part "[patient] states she has a torn left meniscuses and re injured today, [patient] stat[e]s she slipped on water in Wal-Mart and twisted and held onto husband to keep from falling."

[7] The Video Request Form identified the location of Ms. Beasley's reported accident as "cold flu aisle." Under the section labeled "Footage Available," Mr. Strachan circled "Yes" and wrote "I personaly did not see a female slip and fall for the area described to me."

[8] Mr. Strachan testified in his deposition:

In its reply to Ms. Beasley's summary judgment response, Wal-Mart contended she was not entitled to a spoliation presumption because "she did not provide evidence to establish (1) Defendant had a duty to preserve evidence, (2) Defendant's intent regarding the alleged spoliation, or (3) the content of the spoliated evidence."

Following a hearing,[9] the trial court granted summary judgment in Wal-Mart's favor without stating the basis for its ruling.

**Standard of review and applicable law**

We review a trial court's ruling on a summary judgment motion de novo. *See, e.g., Travelers Ins. Co v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When reviewing a no-evidence summary judgment, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). A trial court must grant a no-evidence motion for summary judgment unless the nonmovant produces more than a scintilla of summary judgment evidence to raise a genuine issue of material fact on the challenged elements. *See City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003); TEX. R. CIV. P. 166a(i). A nonmovant produces no more than a scintilla of

---

A. . . . My signature [on the Video Request Form] is for saying that I burnt film. I mean, that's it.

Q. Okay. And can you tell me what you meant by that "burnt film"?

A. I just burn video. I just burn video for our claims team, and that's it.

Q. . . . Is that what the purpose of this form is, is to say that you burnt video?

A. Yes, sir.

Q. Okay. Do you recall seeing a video related to the incident we're here about today, November 4, 2016?

A. Not that I can vaguely say. I—I burnt a lot of film; so for that, no, I can't say clearly, no.

Q. Okay. Based on the completion of this form, is it your understanding that there was a video of this incident?

A. Yes, sir.

Q. Okay. Based on the appearance of the form, is there—It says—At the bottom of the form, it says "Footage Available," and there's a circled "yes." Can you tell me what that means, why you would circle "yes"?

A. All that would have indicated was that, I mean, I burnt film, there was a video of something, not necessarily of anything, but just a film. I burnt film of something.

[9] The appellate record contains no reporter's record of the summary judgment hearing.

evidence when the evidence is so weak that it does no more than create a mere surmise of suspicion of a fact. *Forbes*, 124 S.W.3d at 172. "More than a scintilla of evidence exists if it would allow reasonable and fair-minded people to differ in their conclusions." *Id.*

A premises owner or operator owes its invitees a duty to exercise reasonable care to protect them from dangerous conditions on the premises that are known or reasonably discoverable, but is not an insurer of their safety. *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002). To prove a premises liability claim, an invitee must establish: (1) actual or constructive knowledge of the dangerous condition on the premises by the premises owner or operator, (2) the condition posed an unreasonable risk of harm, (3) the premises owner or operator did not exercise reasonable care to reduce or eliminate the risk, and (4) the premises owner's or operator's failure to use such care proximately caused the plaintiff's injuries. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000). In a slip-and-fall case, the knowledge element can be established by showing (1) the defendant placed the substance on the floor, (2) the defendant actually knew the substance was on the floor, or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it. *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 15–16 (Tex. 2014).

Spoliation is the improper destruction of evidence, proof of which may give rise to a presumption that the missing evidence would be unfavorable to the spoliator. *See Brumfield v. Exxon Corp.*, 63 S.W.3d 912, 919 n.3, 920 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). The party seeking a spoliation presumption bears the burden of establishing the alleged spoliator had a duty to preserve the evidence in question. *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 722 (Tex. 2003). "[S]uch a duty arises only when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that evidence in its possession or control will be material and relevant to that claim." *Brookshire Bros.*, 438 S.W.3d at 20 (quoting

*Johnson*, 106 S.W.3d at 722). "In turn, a 'substantial chance of litigation' arises when 'litigation is more than merely an abstract possibility or unwarranted fear.'" *Id.* (quoting *Nat'l Tank Co. v. Brotherton*, 851 S.W.2d 193, 204 (Tex. 1993)). We review the denial of a spoliation presumption for an abuse of discretion and reverse only if the trial court's denial was arbitrary or unreasonable. *Mangham v. YMCA of Austin, Texas–Hays Communities*, 408 S.W.3d 923, 931 (Tex. App.—Austin 2013, no pet.).

Here, because Ms. Beasley asserted her entitlement to a spoliation presumption in her response to Wal-Mart's summary judgment motion, and the trial court nevertheless granted a summary judgment, we presume the trial court considered and rejected the request for a presumption. *Rico v. L-3 Commc'ns Corp.*, 420 S.W.3d 431, 437 (Tex. App.—Dallas 2014, no pet.). Consequently, our review of the trial court's grant of summary judgment is slightly modified. *Id.* First, we review the denial of a spoliation presumption for an abuse of discretion. *Id.* Second, if we conclude the trial court did not abuse its discretion by denying the spoliation finding, we proceed under the established summary judgment standards of review to determine whether, without the presumption, summary judgment was proper. *Id.*

**Denial of spoliation presumption**

Ms. Beasley asserts in her second issue that "spoliation should have been considered in deciding the summary judgment as Appellant alleged that she would seek spoliation instructions at trial and Appellee admitted that video was reviewed, but failed to produce when requested in discovery and failed to preserve said video." Ms. Beasley argues she "provided evidence to the trial court that Walmart had a duty to preserve evidence as it was put on notice of Appellant's intent to file a claim." Specifically, she contends (1) Wal-Mart "preserved all other evidence pertaining to the incident" and "does not indicate why it would save written documentation, but not save evidence that would show the circumstances surrounding the fall," and (2) she "included

her social security number on her Customer Incident Report, indicating that she intended to make a claim for the incident," and "if that claim was not paid, under an objective standard, a reasonable person would know, or should know, that there is a substantial chance of litigation."[10]

We find significant guidance in prior cases. On this record, we cannot agree with Ms. Beasley that Wal-Mart's retention of form documents and "other evidence pertaining to the incident" necessarily showed knowledge of a substantial chance of litigation. *See Brotherton*, 851 S.W.2d at 204 ("An investigation is not conducted 'in anticipation of litigation' if it is in fact prepared for some other purpose."); *see also Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998) ("[M]eager circumstantial evidence from which equally plausible but opposite inferences may be drawn is speculative and thus legally insufficient to support a finding.").

The case law makes clear that Ms. Beasley "had the burden to show that [Wal-Mart] had a duty to preserve any videotapes and breached that duty by disposing of or destroying any videotapes after they knew, or should have known, that there was a substantial chance there would be litigation and that the evidence would be material and relevant to it." *Rico*, 420 S.W.3d at 437; *accord Brookshire Bros*., 438 S.W.3d at 20; *Johnson*, 106 S.W.3d at 723. The objective test to be applied is whether "a reasonable person would conclude from the severity of the accident and the other circumstances surrounding it that there was a substantial chance that litigation would ensue." *Brotherton*, 851 S.W.2d at 204; *accord Johnson*, 106 S.W.3d at 722. "[A]bsent extraordinary circumstances, the mere occurrence of an accident is not sufficient to trigger the duty to preserve." *Costley v. H.E. Butt Grocery Co.*, No. 10-07-00337-CV, 2009 WL 2264116, at *3 (Tex. App.— Waco July 29, 2009, pet. dism'd) (mem. op.).

---

[10] Though Ms. Beasley claimed spoliation below, mandatory authority prevents us from considering this second basis for reversal because she failed to argue the precise point with sufficient specificity. *See* TEX. R. APP. P. 33.1(a); TEX. R. CIV. P. 166a(c); TEX. R. EVID. 103(a); *see also Martinez v. Abbott Labs.*, 146 S.W.3d 260, 269 (Tex. App.—Fort Worth 2004, pet. denied) (concluding spoliation argument was properly preserved for appellate review because it was sufficiently specific to make trial court aware of complaint). Moreover, Ms. Beasley cites no authority to support that argument and we have found none.

Here, Ms. Beasley stated she slipped on a "water spill," her husband "kept [her] from falling all the way to floor," and she twisted her left knee. Ms. Greenhaw stated (1) she, her dad, and the pharmacist "did not see anyone fall and we heard no noise of anyone hitting the floor or any sounds from [Ms. Beasley]"; (2) she saw no "physical signs of injury" when Ms. Beasley approached and spoke with the pharmacist; (3) she saw no liquid on the floor when Ms. Beasley pointed to where she fell; and (4) after speaking with the pharmacist, Ms. Beasley sat on a bench in the pharmacy area and "they brought her an ice pack." The forms Ms. Beasley and Ms. Greenhaw completed are kept by Wal-Mart in its regular course of business and do not mention litigation. On this record, we conclude the trial court did not abuse its discretion by denying Ms. Beasley's request for a spoliation presumption. *See id.* (concluding trial court in summary judgment case did not err by denying spoliation presumption because grocery store had no duty to preserve evidence where customer who slipped on mashed grape at checkout "twisted her ankle" but grabbed onto cart and thus did not fall all the way to floor, manager spoke with customer and completed incident report stating "there was no obvious swelling" but customer "is already limping," and customer told manager the man shopping with her would take her to hospital emergency room); *see also Johnson*, 106 S.W.3d at 722–23 (concluding trial court abused discretion by submitting spoliation jury instruction where Wal-Mart customer was hit on head by falling item and suffered cut on arm that was cleaned and bandaged by store employee but did not seem seriously injured and did not indicate he might seek legal relief).

**Summary judgment on premises liability claim**

In her first issue, Ms. Beasley contends the trial court erred by granting Wal-Mart's traditional and no-evidence motions for summary judgment. Because the trial court did not specify the basis for its summary judgment ruling, we begin by addressing the no-evidence motion. *See Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

As an invitee,[11] Ms. Beasley had to prove, among other things, that Wal-Mart had actual or constructive notice of the alleged spill. *Reece*, 81 S.W.3d at 814. In that regard, because Ms. Beasley presented no evidence that Wal-Mart placed the foreign substance on the floor or actually knew it was there, she had to prove that "it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it." *Brookshire Bros.*, 438 S.W.3d at 30. "Temporal evidence is the best indicator of whether the owner could have discovered and remedied the condition." *Id.* "An employee's proximity to a hazard, with no evidence indicating how long the hazard was there, merely indicates that it was possible for the premises owner to discover the condition, not that the premises owner reasonably *should* have discovered it." *Reece*, 81 S.W.3d at 816. "Without some temporal evidence, there is no basis upon which the factfinder can reasonably assess the opportunity the premises owner had to discover the dangerous condition." *Id.* While proximity and conspicuousness may affect a factfinder's assessment of what constitutes a reasonable time for a premises owner to discover a dangerous condition, "there must be some proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition." *Id.* Circumstantial evidence from which equally plausible but opposite inferences could be drawn is merely speculative and, therefore, legally insufficient to support a finding of constructive knowledge. *Gonzalez*, 968 S.W.2d at 936.

Here, Ms. Beasley asserts that "even without the spoliation presumption, [she] presented at least a scintilla of evidence that could support a jury's liability finding"—namely, excerpts from her deposition "in which [she] testifies under oath that she did not see the liquid being spilled while she was in line, which supports her belief that the liquid was there prior to her fall . . . [and] that

---

[11] The parties do not dispute that Ms. Beasley is an invitee in this case. *See Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 202 (Tex. 2015) (invitee is one who enters property of another with owner's knowledge and for mutual benefit of both).

Walmart employees were in the area by the spill, with two different employees passing by the spill prior to [her] fall." Ms. Beasley's assertion that "she did not see the liquid being spilled while she was in line" provides no evidence of "how long the hazard was there," as she does not address the length of that time period or what she was doing during that time and, moreover, no evidence demonstrates the liquid was "spilled," as opposed to having resulted from other means such as leaking from some unnoticed source. Ms. Beasley presented no evidence from which a factfinder could draw a reasonable inference as to how long the substance was on the floor. She did not see the substance until she slipped on it and there was no testimony from any witness who observed the substance. Without evidence as to the length of time the substance was on the floor, there was no basis upon which a factfinder could assess Wal-Mart's opportunity to discover and remove it. *See Reece*, 81 S.W.3d at 816; *see also Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 567 (Tex. 2006) (per curiam) (explaining that pursuant to *Reece*, "mere proximity of an employee to a spill, without evidence of when or how it came to be on the floor," is "legally insufficient to charge a premises owner with constructive notice of the hazard").

We conclude Ms. Beasley did not meet her burden to present more than a scintilla of evidence that Wal-Mart had constructive notice of the alleged hazard. *See Reece*, 81 S.W.3d at 816. Thus, the trial court did not err by granting Wal-Mart's no-evidence motion for summary judgment. *See* TEX. R. CIV. P. 166a(i). Consequently, we need not address Wal-Mart's traditional summary judgment motion. *See Merriman*, 407 S.W.3d at 248.

We decide Ms. Beasley's two issues against her and affirm the trial court's judgment.

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

181542F.P05

–11–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

SANDRA BEASLEY, Appellant

No. 05-18-01542-CV     V.

WAL-MART STORES, INC., Appellee

On Appeal from the 86th Judicial District Court, Kaufman County, Texas
Trial Court Cause No. 98406-86.
Opinion delivered by Justice Carlyle.
Justices Myers and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Wal-Mart Stores, Inc. recover its costs of this appeal from appellant Sandra Beasley.

Judgment entered this 18th day of February, 2020.