v.

**The SOURCE FOR PUBLICDATA.COM, LP and Shadowsoft, Inc., Appellees**

**No. 05-16-00815-CV**

Court of Appeals of Texas, Dallas.

Opinion Filed June 28, 2017

Rehearing Overruled August 7, 2017

Jonathan Wharton, Longview, for Appellant.

John Edward Collins, Dallas, for Appellees.

Before Justices Fillmore, Whitehill, and Boatright

## OPINION

Opinion by Justice Boatright

Appellant D.K.W. sued appellees The Source for PublicData.com and Shadowsoft, Inc., alleging that they violated Chapter 109, Texas Business and Commerce Code, by publishing her expunged criminal record. The trial court granted summary judgment for appellees. Because appellees did not establish that they were entitled to judgment as a matter of law, we reverse the trial court's judgment and remand the cause for further proceedings.

### BACKGROUND

On November 14, 2009, D.K.W. was arrested for furnishing alcohol to or purchasing alcohol for a minor. Her charge was eventually reduced to disorderly conduct, a Class C misdemeanor. She received a fine-only deferred adjudication which was dis-

missed on January 11, 2010. Texas law allows for the expunction of records when a person receives a fine-only deferred adjudication that is ultimately dismissed. TEX. CODE CRIM. PROC. ANN. art. 45.051(e) (West Supp. 2016). D.K.W. obtained a court order on May 19, 2014, that all of the records relating to her arrest and prosecution be destroyed.

Appellee The Source for PublicData.com ("PublicData.com") is a private business entity that publishes criminal record information on a website. Appellee Shadowsoft, Inc. is an owner of PublicData.com. D.K.W. notified appellees of the expunction order, but appellees did not remove her criminal record information from their website until more than seven months later, after D.K.W. had filed this lawsuit.

Appellees filed a motion for summary judgment on both traditional and no-evidence grounds. They asserted five grounds:

1. D.K.W. lacks standing because she has not sustained any concrete harm;
2. D.K.W. failed to prove that appellees charged a fee of $150 or more to remove her criminal record information from their website, and failed to prove that appellees obtained the records in question from the Texas Department of Public Safety;
3. The criminal record information in question was not "published";
4. D.K.W. did not give proper notice to appellees because the expunction order she sent appellees was not final; and
5. D.K.W. may not recover damages and attorney's fees without proof of "independent damage, injury or harm."

In support of their motion, appellees relied on D.K.W.'s interrogatory and disclosure responses and the affidavit of Dale Bruce Stringfellow, Jr. Stringfellow is president of Shadowsoft, Inc., and "president of the company that is the general partner for" PublicData.com. He testified:

- He conducted a search on appellees' databases for any records concerning D.K.W. He determined that no one other than D.K.W.'s lawyer had conducted a search for D.K.W.'s name in appellees' records;

- "PublicData has never obtained any information of any kind or criminal record information pursuant to a request for public information under Chapter 552, Government Code; or purchased or otherwise obtained by it or any affiliated business entity from the Department of Public Safety under Subchapter F, Chapter 411, Government Code";

- Appellees have never charged a fee of $150 or more to remove criminal record information from their databases; and

- Appellees do make changes to their databases, but have "requested" that their "customers" not "send expungement orders." They "rely solely on complete database updates from the recording government entity" because they have received "so many counterfeit expungement documents."

The trial court granted appellees' motion for summary judgment without specifying the grounds. This appeal followed. In six issues, D.K.W. challenges each of the grounds raised in appellees' motion. Appellees respond that summary judgment on each ground was proper, and additionally assert that the declaration filed by D.K.W.'s lawyer is not competent summary judgment evidence.

### APPLICABLE LAW AND STANDARDS OF REVIEW

When an order of expunction is final, "the release, maintenance, dissemination, or use of the expunged records for any purpose is prohibited," and the person arrested may deny the occurrence of the arrest and the existence of the expunction order.[1] TEX. CODE CRIM. PROC. ANN. art. 55.03 (West 2006).

Chapter 109 of the Texas Business and Commerce Code governs business entities that are engaged in publication of certain criminal record information. TEX. BUS. & COM. CODE ANN. §§ 109.001–.007 (West Supp. 2016). Chapter 109 applies to a business entity that (1) publishes criminal record information, and (2) requires payment of a fee or other consideration to remove, correct, or modify criminal record information. *Id.* § 109.002(a).[2]

A business entity may not publish criminal records if it has knowledge or has received notice that an order of expunction has been issued under article 55.02,[3] Texas Code of Criminal Procedure. *Id.* § 109.005(a)(1). A business entity that publishes information in violation of section 109.005 is liable to the individual who is the subject of the information in an amount not to exceed $500 for each separate violation, and in the case of a continuing violation, an amount not to exceed $500 for each subsequent day on which the violation occurs. *Id.* § 109.005(b). An individual who prevails in an action under section 109.005 is also entitled to recover court costs and reasonable attorney's fees. *Id.* § 109.005(d).

We apply well-settled standards in reviewing the trial court's summary judgment. We review the grant of summary judgment de novo. *Rico v. L-3 Commc'ns Corp.*, 420 S.W.3d 431, 438 (Tex. App.—Dallas 2014, no pet.). When a party files a motion for summary judgment on both no-evidence and traditional grounds, we first review the trial court's judgment under the no-evidence standard of review. *Gonzalez v. VATR Constr. LLC*, 418 S.W.3d 777, 782 (Tex. App.—Dallas 2013, no pet.). Should we determine that summary judgment was appropriate under the no-evidence standard, we need not address issues related to the traditional summary judgment motion. *Rico*, 420 S.W.3d at 439.

We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *Id.* at 438. To defeat a no-evidence summary judgment, the nonmovant is required to produce evidence that raises a genuine issue of material fact on each challenged element of its claim. *Id.* For a traditional summary judgment, the movant carries the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Gonzalez*, 418 S.W.3d at 782. A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action or if it conclusively establishes all elements of an affirmative defense. *Id.*

---

1. There is one statutory exception that is not applicable here. TEX. CODE CRIM. PROC. ANN. art. 55.03(3) (person arrested or any other person, when questioned under oath in criminal proceeding about arrest for which records have been expunged, may state only that matter in question has been expunged).

2. The full text of section 109.002(a) is quoted below in our discussion of the applicability of Chapter 109 to D.K.W.'s claims.

3. Article 55.02 sets forth the procedure for expunction. TEX. CODE CRIM. PROC. ANN. art. 55.02 (West Supp. 2016).

In reviewing both a traditional and no-evidence summary judgment, we consider the evidence in the light ·most favorable to the nonmovant. *Rico*, 420 S.W.3d at 438. We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Id.*

When construing a statute, we begin with its plain language. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). "Our primary objective is to determine the Legislature's intent which, when possible, we discern from the plain meaning of the words chosen." *Id.* Statutory construction is a question of law that we review de novo. *Id.*

Appellees have challenged D.K.W.'s standing to sue. Standing is a component of subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). If a party lacks standing to bring an action, then the trial court lacks subject matter jurisdiction to hear the case. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005). We review a plaintiff's standing de novo. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004).

## ANALYSIS

### 1. Standing

In their motion for summary judgment, appellees contended that they were entitled to judgment because D.K.W. had not sustained "concrete harm, damage or injury as required by the Texas Constitution." Appellees also argue that D.K.W. must allege more than a statutory violation to show concrete injury, citing *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 1547–48, 194 L.Ed.2d 635 (2016). In her first issue, D.K.W. asserts that appellees' publication of her expunged criminal records in violation of Texas law is a sufficient injury to provide her standing to assert her claim.

Standing focuses on the question of who may bring an action. *Dallas Fort Worth Int'l Airport Bd. v. Cox*, 261 S.W.3d 378, 385 (Tex. App.—Dallas 2008, no pet.). To establish standing, a person must show a personal stake in the controversy. *Id.* Whether a party has standing is predicated on either statutory or common law authority. *Id.* If standing is claimed pursuant to a statute, we construe the statute to determine upon whom the Texas Legislature conferred standing and whether the claimant falls into that category. *Id.* The statute itself serves as the framework for the standing analysis. *In re Russell*, 321 S.W.3d 846, 856 (Tex. App.—Fort Worth 2010, orig. proceeding).

Section 109.005 of Chapter 109 is entitled "Publication of Certain Criminal Record Information Prohibited; Civil Liability." *See TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 75 (Tex. 2016) (although statutory heading does not limit or expand statute's meaning, it can "inform the inquiry into the Legislature's intent"). Under section 109.005(b), "[a] business entity that publishes information in violation of this section *is liable to the individual who is the subject of the information* in an amount not to exceed $500 for each separate violation. . . ." TEX. BUS. & COM. CODE ANN. § 109.005(b) (emphasis added). Subsection (c) of section 109.005 provides that "the court may grant injunctive relief to prevent or restrain a violation of this section," and subsection (d) permits "[a]n individual who prevails under this section" to recover court costs and reasonable attorney's fees. *Id.* § 109.005(d). The statute specifically authorizes "the individual who is the subject of the information" to bring suit against "[a] business entity that publishes information in violation of this section." *Id.* § 109.005(b). It is undis-

puted that D.K.W.. is "the individual who is the subject of the information" allegedly published by appellees in violation of section 109.005. We conclude D.K.W. has standing under the plain meaning of section 109.005(b).

 Relying on *Spokeo*, appellees argue that under the common law, D.K.W. must show more than a statutory violation in order to establish standing. In *Spokeo*, the Court reversed the Ninth Circuit's holding that an alleged violation of the federal Fair Credit Reporting Act was sufficient, by itself, to create a case or controversy as required by Article III of the United States Constitution to establish standing to sue. 136 S.Ct. at 1550. The Court remanded the case for the Ninth Circuit's consideration of whether the plaintiff's alleged injury, from publication of incorrect information on a "people search" website, was sufficiently "concrete" to establish Article III standing. *Id.*[4] Appellees argue that under *Spokeo*, D.K.W.'s alleged injury is not sufficiently "concrete" because "she has sustained no injury of any kind." We reject appellees' argument for two reasons.

First, although we "turn for guidance to precedent from the U.S. Supreme Court" when determining whether a plaintiff has established common law standing, *Heckman v. Williamson County*, 369 S.W.3d 137, 154 (Tex. 2012), here, the framework for our standing analysis is the language chosen by the Legislature in Chapter 109. *In re Russell*, 321 S.W.3d at 856. As we have explained, our task is to determine whether D.K.W. falls into a category of persons upon whom the Texas Legislature conferred standing under Chapter 109. *Cox*, 261 S.W.3d at 385. We have concluded that she does.

Second, even under *Spokeo*, D.K.W. has offered summary judgment evidence of a concrete injury. The Court explained that a "bare procedural violation" of a statute that does not result in harm or material risk of harm, such as the publication of an incorrect zip code, is not sufficiently "concrete" to confer standing. *Spokeo*, 136 S.Ct. at 1549.[5] The Court acknowledged, however, that even certain kinds of intangible harms may be "concrete" for purposes of Article III. *Id.* The Court explained that "Congress is well positioned to identify intangible harms" that meet minimum constitutional requirements. *Id.* By statute, Congress may "'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Especially where the harm involved has a close relationship to harm that has been traditionally regarded as a

---

**4.** Under an Article III standing analysis, a plaintiff must show an "injury in fact," that is, "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S.Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

**5.** Robins, the plaintiff in *Spokeo*, alleged that the online profile published by the defendant showed that he was married, had children, was in his 50s, had a job, was relatively affluent, and held a graduate degree. *Id.* at 1546. Robins further alleged that this information was inaccurate, and argued that he had a personal interest in the handling of his credit information. *Id.* The Supreme Court explained that even assuming Robins's personal interest, "not all inaccuracies cause harm or present any material risk of harm" and therefore may not constitute "concrete" injuries. *Id.* at 1550. In contrast, as we discuss below, D.K.W. offered evidence of a material risk of harm from publication of her expunged criminal record in violation of Chapter 109.

basis for a lawsuit in English or American courts, an intangible harm may be sufficiently "concrete" to confer standing. *Id.*

 D.K.W. does not allege a "bare procedural violation" of Chapter 109 here. *See id.* She alleges instead the unauthorized publication of her criminal history information, conduct specifically prohibited under Chapter 109, for which the Legislature has provided a civil remedy. Tex. Bus. & Com. Code Ann. § 109.005(b). As we have explained, D.K.W. meets the statutory requirement for bringing an action under Chapter 109 because she alleges she is an "individual who is the subject of the information" unlawfully published by appellees. And as the Court in *Spokeo* recognized, even "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." 136 S.Ct. at 1549. D.K.W. also cites defamation and invasion of privacy as long-recognized causes of action for injuries similar to those she asserts here.

D.K.W. alleges that Chapter 109 prevents a private criminal record company from continuing to publish criminal records after they have been expunged. She argues that she was required to hire a lawyer and incur court costs to remove her expunged records from the public domain. In her summary judgment affidavit,

D.K.W. testified that when she began applying for jobs at healthcare facilities, she hired a lawyer to seek an expunction order of her 2009 misdemeanor. She explained that the expunction would allow her to state on job applications that she had not been arrested. *See* Tex. Code Crim. Proc. Ann. art. 55.03 (effect of expunction). A potential employer conducting a background check on appellees' website, however, would find the criminal record information and conclude that D.K.W. had lied on her application. D.K.W. cannot say whether or not her unsuccessful employment applications were rejected due to an employer reaching this conclusion. Nonetheless, appellees' refusal to revise or remove the expunged record without payment of a fee, in violation of Chapter 109, presented a material risk of injury to D.K.W. at the time she brought suit.

We conclude that under either the statutory or the common law framework, D.K.W. has standing to assert her claims against appellees. Summary judgment for appellees was not proper on this ground. We sustain D.K.W.'s first issue.

## 2. Applicability of Chapter 109

 In their motion for summary judgment, appellees asserted that Chapter 109 does not apply because (1) they did not obtain their information regarding D.K.W. under either Chapter 411[6] or Chapter 552[7] of the government code, and (2) they

6. Chapter 411, Texas Government Code, is entitled "Department of Public Safety of the State of Texas." Subchapter F of Chapter 411 governs the dissemination and use of criminal history record information maintained by the department. *See, e.g.,* Tex. Gov't Code Ann. §§ 411.083 (dissemination of criminal history record information); 411.084 (use of criminal history record information) (West 2012 & Supp. 2016). A private entity that compiles and disseminates for compensation criminal history record information shall destroy and

may not disseminate any information in its possession with respect to which it has received notice that an order of expunction has been issued under code of criminal procedure article 55.02. Tex. Gov't Code Ann. § 411.0851(a) (West Supp. 2016).

7. Chapter 552, Texas Government Code, is entitled "Public Information," and is contained in Subtitle A, "Open Government," of Title 5. The chapter governs information collected, assembled, or maintained by a governmental body, and the availability of that

do not charge a fee of $150 or more to remove criminal record information. To support their first contention, appellees argue that the information in question came from Gregg County, not from the sources named in the statute. To support their second contention, appellees deny charging a fee of $150 or more to remove criminal record information or a fee to correct or modify criminal record information. For both contentions, they rely on the Stringfellow affidavit.

In her second and third issues, D.K.W. alleges she offered summary judgment evidence raising a fact issue on both contentions. In her second issue, D.K.W. contends the summary judgment record shows that appellees purchase criminal record information from the Texas Department of Public Safety. D.K.W. relies on both Stringfellow's deposition testimony that appellees "must" purchase or obtain information from the Department of Public Safety, and the affidavit of Charlene Cain, a "Program Specialist and the Internet Coordinator for the Computerized Criminal History System in the Access and Dissemination Bureau" of the Texas Department of Public Safety. Cain testified that "PublicData.com, through Shadowsoft, Inc., purchases criminal record information from the Department of Public Safety under Subchapter F, Chapter 411, of the Government Code."

In her third issue, D.K.W. argues that she offered summary judgment evidence that appellees require payment of a fee to correct or modify criminal record informa-

tion. She relies on the declaration of Jonathan Wharton attaching an email from PublicData.com stating that it will make corrections to its records if "the requester has agreed to pay for the update," as well as Stringfellow's testimony that the email was from appellees' customer service call center.

D.K.W.'s second and third issues require that we construe section 109.002(a), which provides:

**Applicability of Chapter**

(a) Except as provided by Subsection (b), this chapter applies to:

 (1) a business entity that:

 (A) publishes criminal record information, including information:

 (i) originally obtained pursuant to a request for public information under Chapter 552, Government Code; or

 (ii) purchased or otherwise obtained by the entity or an affiliated business entity from the Department of Public Safety under Subchapter F, Chapter 411, Government Code; and

 (B) requires the payment:

 (i) of a fee in an amount of $150 or more or other consideration of comparable value to remove criminal record information; or

 (ii) of a fee or other consideration to correct or modify criminal record information. . . .

information to the public. *See, e.g.,* Tex. Gov't Code Ann. § 552.001 (West 2012) (stating policy that "each person is entitled, unless otherwise expressly provided by law, at all times to complete information about the affairs of government and the official acts of public officials and employees"). Chapter 552 also includes exceptions to the general rules of disclosure. Section 552.1425, for ex-

ample, provides for civil penalties to be paid by "a private entity that compiles and disseminates for compensation criminal history record information" if the entity has received notice that an order of expunction has been issued under article 55.02 of the code of criminal procedure. Tex. Gov't Code Ann. § 552.1425 (West Supp. 2016).

As we have noted, appellees argue that they do not obtain their information under either Chapter 411 or Chapter 552. Even if this contention were true, summary judgment for appellees was not warranted because section 109.002 is not limited to business entities that obtain information under either Chapter 411 or Chapter 552. The plain language of the statute is that it applies to "a business entity that: (A) publishes criminal record information *including*" information obtained under either Chapter 411 or Chapter 552. TEX. BUS. & COM. CODE ANN. § 109.002(a)(1)(A) (emphasis added). The word "including" is not defined in Chapter 109. We may therefore look to the Legislature's definition from the Code Construction Act: " 'includes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded." TEX. GOV'T CODE ANN. § 311.005(13) (West 2013); *see also Lee v. Mitchell*, 23 S.W.3d 209, 212 (Tex. App.—Dallas 2000, pet. denied) (court may look to Code Construction Act to provide guidance in construing statute). As long as the information appellees published about D.K.W. was "criminal record information," appellees were not entitled to summary judgment on the ground they did not fall within section 109.002(a)(1)(A)'s definition.

"Criminal record information" is a defined term in Chapter 109, and means "information about a person's involvement in the criminal justice system." TEX. BUS. & COM. CODE ANN. § 109.001(2). "The term includes: (A) a description or notation of any arrests, any formal criminal charges, and the dispositions of those criminal charges," as well as "(C) personal identifying information of a person displayed in conjunction with any other record of the person's involvement in the criminal jus-

tice system." *Id.* The information at issue here falls within the statute's definition of "criminal record information." The record reflects that the information appellees published about D.K.W. included D.K.W.'s name, date of birth, height, weight, and race, as well as the case type, the criminal charges, the level of the offense, and the disposition of the charges. We conclude that this information is "criminal record information" within the meaning of Chapter 109.

Further, under the statute, the $150 threshold applies to "remove" criminal record information. *Id.* § 109.002(a)(1)(B)(i). There is no minimum threshold applicable to "correct or modify" criminal record information; if the business entity charges "a fee or other consideration," then the statute applies. And although Stringfellow states, "PublicData.com has never charged a fee in an amount of $150 or more or other consideration of comparable value to remove criminal record information or required the payment of a fee or other consideration to correct or modify criminal record information," the summary judgment record includes appellees' email response stating in part:

> PublicData will NOT modify records in any database upon notification of inaccuracies.... In the event that PublicData's regular update cycle is inconvenient, you may request that PublicData update a database immediately. If PublicData has available programmers and/or database administrators to accommodate the request, *and the requester has agreed to pay for the update,* PublicData will be happy to satisfy the request.

(Emphasis added). We conclude that appellees did not establish their right to judgment as a matter of law regarding the inapplicability of Chapter 109 to D.K.W.'s claims against them. We sustain D.K.W.'s second and third issues.

### 3. Publication

■ In her fourth issue, D.K.W. challenges appellees' third ground for summary judgment, that they did not "publish" expunged records within the meaning of section 109.001(4). Section 109.005 of Chapter 109 provides that a business entity may not "publish" criminal record information in its possession if it has knowledge or has received notice that an order of expunction has been issued under article 55.02 of the code of criminal procedure. "Publish" is defined in section 109.001(4): " 'Publish' means to communicate or make information available to another person in writing or by means of telecommunications and includes communicating information on a computer bulletin board or similar system." Tex. Bus. & Com. Code Ann. § 109.001(4).

■ Appellees do not deny that D.K.W.'s criminal record information was posted on their website. They argue, however, that the information was not "published" because their records showed that no one accessed the information on the website except D.K.W. and her counsel. They contend that because D.K.W.'s attorney was her agent, the publication to him was as a matter of law only a publication to D.K.W. herself. Therefore, they argue, the information was not published "to another person" under the statutory definition. They rely on a case discussing publication as an element of a defamation claim. *Renfro Drug Co. v. Lawson*, 138 Tex. 434, 160 S.W.2d 246, 250 (1943) (no "publication" where sale and delivery of magazine containing defamatory statement was to plaintiff's attorney). *Renfro* reflects the well-settled principle that a plaintiff asserting a claim for defamation must prove that the defendant "published a statement." *See, e.g., WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) (listing elements of defamation claim); *see*

*also Austin v. Inet Techs., Inc.*, 118 S.W.3d 491, 496 (Tex. App.—Dallas 2003, no pet.) (defining "published" for purposes of defamation claim).

D.K.W., however, is not asserting a defamation claim. She is asserting a claim under a statute in which the Legislature has expressly defined "publish." Tex. Bus. & Com. Code Ann. § 109.001(4). Appellees' interpretation ignores the phrase "make information available" in the statutory definition. By posting the information on their website, appellees made D.K.W.'s criminal record information available for inspection by anyone with access to the website. The statutory definition does not include the additional elements required to establish a defamation claim. *Cf. Austin*, 118 S.W.3d at 496 ("Defamatory statements are 'published' if they are communicated orally, in writing, or in print to some third person capable of understanding their defamatory import and in such a way that the third person did so understand.").

As an independent ground to support the trial court's summary judgment, appellees contend that the only evidence of "publication"—the declaration of D.K.W.'s attorney Jonathan Wharton submitted in support of D.K.W.'s summary judgment response—was not competent summary judgment evidence. They argue that a party's lawyer may not act as a witness about contested factual matters, citing *Mauze v. Curry*, 861 S.W.2d 869, 870 (Tex. 1993). A lawyer may, however, testify to uncontested issues or matters of formality in which there will be no substantial evidence offered in opposition. Tex. Disciplinary Rules Prof'l Conduct R. 3.08, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2013) (Tex. State Bar R. art. X, § 9).

Here, appellees objected to Wharton's authentication of Exhibit M to D.K.W.'s summary judgment response, but did not

obtain a ruling on their objection. Exhibit M is a printout dated November 30, 2014, from PublicData.com showing D.K.W.'s criminal record information. The fact evidenced by Exhibit M—that appellees retained D.K.W.'s criminal record information on their website after being notified of the expunction—is not disputed, and is also established in the record through Stringfellow's deposition testimony. Although Stringfellow would not agree that appellees had "published" D.K.W.'s criminal record information for purposes of Chapter 109, he agreed that appellees had kept D.K.W.'s criminal record information "publicly available" for seven months after being notified of the expunction:

Q. ... You made her records available for publication, correct?

A. I made her records available for searches, yes, sir.

Q. After the expunction?

A. Yes, sir.

. . .

Q. Okay. So from that date [of the notice letter], how long did y'all keep her information publicly available?

A. Approximately?

Q. Yeah.

A. Seven—approximately seven months.

Q. Okay. Why?

A. Why? Why what?

Q. Why did you keep her information publicly available? Her expunged information, why did you keep that publicly available for seven months?

A. Well, the database wasn't updated until January the 27th.

As Stringfellow's testimony demonstrates, appellees do not contest the fact that they retained D.K.W.'s criminal record information on their website after being notified of the expunction. Wharton's declaration authenticating Exhibit M pertains to an un-contested issue or matter of formality for which there will be no substantial evidence offered in opposition. *See* Tex. Disciplinary Rules Prof'l Conduct R. 3.08 (lawyer may not act as advocate and witness unless testimony relates to uncontested issue or matter of formality); *cf. Mauze*, 861 S.W.2d at 870 (lawyer who testified to two contested, essential elements of legal malpractice claim should have been disqualified).

In addition, even if appellees had sought to disqualify Wharton, they would have been required to establish actual prejudice from Wharton's "dual roles as attorney and witness." *In re Sandoval*, 308 S.W.3d 31, 34 (Tex. App.—San Antonio 2009, orig. proceeding) (citing *In re Sanders*, 153 S.W.3d 54, 57 (Tex. 2004) (orig. proceeding) (per curiam)). Assuming they had done so, however, Stringfellow's admission alone constituted more than a scintilla of summary judgment evidence that appellees had "communicate[d] or ma[d]e [D.K.W's] information available" for purposes of Chapter 109. Tex. Bus. & Com. Code Ann. § 109.001(4) (definition of "publish"). Summary judgment for appellees was not appropriate on this ground. We sustain D.K.W.'s fourth issue.

### 4. Notice of final expunction order

 Appellees sought summary judgment on the ground that they did not have notice of a "final" expunction order. They argued that because the order could have been appealed, it was not "final," and therefore did not trigger section 109.005. In her fifth issue, D.K.W. contends that appellees received the notice required by section 109.005, which does not contain any reference to a "final" order. Section 109.005(a) provides:

(a) A business entity may not publish any criminal record information in the business entity's possession with respect

to which the business entity has knowledge or has received notice that:

> (1) an order of expunction has been issued under Article 55.02, Code of Criminal Procedure; . . . .

Appellees did not cite any authority for their argument in their summary judgment motion, and do not reassert the argument in their appellate brief. The record reflects that D.K.W.'s attorney mailed appellees a letter enclosing the expunction order. Stringfellow admitted receipt of the letter with the expunction order enclosed. In addition, Cain testified that the Texas Department of Public Safety is required by law to notify appellees of all expunctions that it receives under article 55.02, section 3(c-2) of the code of criminal procedure, and does so every thirty days. *See* TEX. CODE CRIM. PROC. ANN. art. 55.02, § 3(c-2). Under article 55.02, section 3(c), clerks of court send the department "final" expunction orders. *Id.* art. 55.02, § 3(c). Even if appellees are correct that they must receive a "final" order, and even if they received the order from D.K.W. during a period when it could have been appealed, Cain's testimony is some evidence that appellees also received the order after it became final. Summary judgment for appellees was not proper on this ground. We sustain D.K.W.'s fifth issue.

### 5. Necessity of independent damage

▇ In their fifth ground for summary judgment, appellees argued that "since Plaintiff has suffered no independent damage, injury or harm her cause of action fails and thus [she] is not entitled to damages or attorney's fees." In her sixth issue, D.K.W. argues that "[s]ummary judgment on this ground was inappropriate" because "[i]f she is awarded statutory damages, then attorneys' fees may be awarded as well," "even without actual damages." She relies on *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880 (Tex. 1990) (per curiam), to support her argument.

In *Ragsdale*, the supreme court explained that the Texas Election Code provided for the recovery of reasonable attorney's fees in addition to a statutory penalty for violations. *Id.* at 881. The court held that the plaintiff was entitled to judgment in the amount of the statutory penalty for the defendant's violations. *Id.* And relying on the express statutory provision permitting recovery of attorney's fees, the court rendered judgment for the $22,500 in attorney's fees proved at trial, rejecting both the trial court's award of $150 and the appellate court's reversal and remand for trial on the issue. *Id.* The court did not require proof of damages separate from the statutory penalty to support the plaintiff's recovery of attorney's fees.

Under Chapter 109, "[a] business entity that publishes information in violation of this section is liable to the individual who is the subject of the information in an amount not to exceed $500 for each separate violation and, in the case of a continuing violation, an amount not to exceed $500 for each subsequent day on which the violation occurs." TEX. BUS. & COM. CODE ANN. § 109.005(b). Costs and reasonable attorney's fees may be recovered by "an individual who prevails in an action brought under this section." *Id.* § 109.005(d).

Under the plain language of Chapter 109, and consistent with the supreme court's interpretation of an analogous statutory scheme, D.K.W. did not have to prove "independent damage" to recover statutory damages and attorney's fees. We sustain her sixth issue.

#### CONCLUSION

We have sustained D.K.W.'s six issues. Appellees were not entitled to judgment as a matter of law on D.K.W.'s claim under

Chapter 109. We reverse the trial court's judgment and remand the cause for further proceedings.