

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00044-CV

_____

KARI NICOLE QUEBE HAWK, Appellant

V.

PAMELA LOUISE WALLACE, Appellee

On Appeal from the 30th District Court
Wichita County, Texas
Trial Court No. DC30-CV2019-1005

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

This case involves the question of whether Appellant Kari Nicole Quebe Hawk has standing to challenge the annulment of the marriage between Appellee Pamela Louise Wallace and John Thomas King. At the trial court level, Wallace asserted that Hawk, a stranger to the marriage, lacks standing, and Wallace filed a plea to the jurisdiction seeking to dismiss Hawk's petition for bill of review challenging the annulment. The trial court granted Wallace's plea to the jurisdiction and dismissed Hawk's petition. On appeal, Hawk raises three issues challenging the trial court's grant of the plea to the jurisdiction. Because we hold that Hawk lacks standing to challenge the annulment, we will affirm.

## II. BACKGROUND

As alleged in Hawk's petition for bill of review, Wallace and King were married in Harris County, Texas, in 1985. At some point later, Wallace began residing with Hawk's father, Charles Lloyd Quebe, Sr. in Galveston County, Texas. Quebe died intestate in 2018. Following Quebe's death, Hawk filed an application for issuance of letters of independent administration of Quebe's estate in a Galveston County probate court. Wallace later filed her own application for issuance of letters of independent administration of Quebe's estate in the Galveston County probate court. In Wallace's application, she maintained that she was Quebe's common-law wife at the time of his death.

While the Galveston County probate matter was pending, Wallace filed a petition for annulment of her marriage with King in the 30th District Court of Wichita County—the trial court from which this appeal was initiated. In her petition for annulment, Wallace stated that she sought an annulment "under the grounds set out in § 6.107 of the Texas Family Code." *See* Tex. Fam. Code Ann. § 6.107 (authorizing a court to grant an annulment if "the other party used fraud, duress, or force to induce the petitioner to enter into the marriage" and if "the petitioner has not voluntarily cohabited with the other party since learning of the fraud or since being released from the duress or force"). Following a hearing in which a record was waived and in which King waived issuance and service of citation and did not appear, the trial court entered an agreed decree of annulment declaring that the marriage between Wallace and King was "null and void."[1] Wallace later introduced the agreed decree of annulment into the Galveston County probate proceeding, and the Galveston County probate court made a finding that Wallace and Quebe had a common-law marriage.[2]

---

[1]King also signed the agreed decree of annulment, noting that he "approved and consented to [the decree] as to both form and substance."

[2]In her brief, Wallace notes that the Galveston County probate court "granted Hawk's oral request to abate the probate case to pursue the already[-]filed Bill of Review in the annulment case—this appeal, and the probate case has been abated since December 12, 2019."

Hawk later filed a petition for bill of review in the Wichita County trial court, asking that the court vacate the agreed decree of annulment because she had not received notice of the annulment proceeding and because Wallace had allegedly obtained the annulment based on acts of fraud. Wallace answered and filed a plea to the jurisdiction, arguing that Hawk lacks standing to challenge the annulment proceeding because she was a stranger to the Wallace–King marriage. In response, Hawk argued that she had standing to pursue the bill of review because she had an interest prejudiced by the annulment proceeding, namely that her inheritance from Quebe's estate had been reduced by the annulment.

The day before the hearing on the plea to the jurisdiction, Wallace filed a trial brief in support of her plea. The trial brief contains analysis and citations to authority in support of her argument that Hawk lacks standing. The trial brief also contains the additional argument that Hawk cannot meet the requirements of a bill of review because she has no meritorious defense and because she was not entitled to be served with the petition for annulment. At the beginning of the hearing, counsel for both Hawk and Wallace announced that they were ready to proceed with the hearing. At the conclusion of the hearing, the trial court took the plea to the jurisdiction under advisement, and three days later, the trial court signed an order granting Wallace's plea and dismissing Hawk's petition for bill of review. This appeal followed.

## III.  DISCUSSION

Hawk raises three issues on appeal.  In her first issue, Hawk argues that the trial court erred by granting the plea to the jurisdiction because she has standing to bring her petition for bill of review.  In her second issue, Hawk argues that we should not consider any new arguments and authorities contained in Wallace's trial brief because it was filed only one day before the hearing on the plea to the jurisdiction.  In her third issue, Hawk argues that even if we were to consider the new arguments and authorities contained in Wallace's trial brief, the new arguments are not a proper challenge to Hawk's standing and that, in any event, Hawk does meet the requirements of a bill of review.

### A.  Standard of Review

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction.  *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Standing is a component of subject-matter jurisdiction.  *Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 149 (Tex. 2015).  We review a trial court's ruling on a plea to the jurisdiction de novo.  *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632 (Tex. 2015).  We likewise review questions of standing de novo.  *Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020).

The party asserting standing bears the burden of proof on the issue.  *Howard v. U.S. Bank Nat'l Ass'n as Tr. of OWS REMIC Tr. 2013-1*, No. 05-19-00315-CV, 2020 WL 3786215, at *3 (Tex. App.—Dallas July 7, 2020, pet. denied) (mem. op.); *In re*

5

*L.D.F.*, 445 S.W.3d 823, 828 (Tex. App.—El Paso 2014, no pet.). In assessing standing, we look primarily to the pleadings and consider relevant evidence of jurisdictional facts when necessary to resolve the jurisdictional issues raised. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000); *L.D.F.*, 445 S.W.3d at 828. We construe the pleadings in the petitioner's favor, looking to the language to ascertain the pleader's intent. *L.D.F.*, 445 S.W.3d at 828; *In re M.J.G.*, 248 S.W.3d 753, 757 (Tex. App.—Fort Worth 2008, no pet.). When, as here, the trial court does not make separate findings of fact and conclusions of law on the issue of standing, we imply the findings necessary to support the judgment and review the entire record to determine if the trial court's implied findings are supported by the evidence. *L.D.F.*, 445 S.W.3d at 828; *In re S.M.D.*, 329 S.W.3d 8, 13 (Tex. App.—San Antonio 2010, pet. dism'd).

## B.  The Law Regarding Standing and Bills of Review

Standing deals with the issue of whether a litigant is the proper person to bring a lawsuit. *JPMorgan Chase Bank, N.A. v. Pro. Pharmacy II*, 508 S.W.3d 391, 408 (Tex. App.—Fort Worth 2014, no pet.); *Webb v. Voga*, 316 S.W.3d 809, 812 (Tex. App.—Dallas 2010, no pet.). The general test for standing requires that there be (1) a real controversy between the parties that (2) will be actually determined by the judicial declaration sought. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005); *In re Fort Worth Star-Telegram*, 441 S.W.3d 847, 850 (Tex. App.—Fort Worth 2014, orig. proceeding). To establish standing, a party must have a personal stake in the

6

controversy.  *In re B.I.V.*, 923 S.W.2d 573, 574 (Tex. 1996); *D.K.W. v. Source for PublicData.com, LP*, 526 S.W.3d 619, 625 (Tex. App.—Dallas 2017, pet. denied).

A bill of review is an equitable proceeding to set aside a prior judgment that is no longer appealable or subject to a challenge by a motion for new trial.  *Mabon Ltd. v. Afri-Carib Enters., Inc.*, 369 S.W.3d 809, 812 (Tex. 2012).  Ordinarily, a bill-of-review plaintiff must plead and prove (1) a meritorious defense to the underlying action; (2) that the plaintiff was prevented from making by the fraud, accident, or wrongful act of the opposing party; and (3) unmixed with any fault or negligence of his own.  *Id.* To have standing to pursue a bill of review, a person generally must have been a party to the prior judgment or have had a then-existing right or interest that was prejudiced by the prior judgment.  *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 502 (Tex. 2010); *Rodriguez ex rel. Rodriguez v. EMC Mortg. Corp.*, 94 S.W.3d 795, 798 (Tex. App.—San Antonio 2002, no pet.).

## C.  Application of the Law to the Facts

Hawk contends that she had a then-existing right or interest that was prejudiced by the agreed decree of annulment.  Specifically, she contends that because Quebe passed away intestate and because she and her brother were Quebe's sole heirs at the time of his death, the agreed decree of annulment reduced her interest in Quebe's estate.  *See* Tex. Est. Code Ann. §§ 201.001(a), (b) (establishing that the estate of a person who dies intestate and does not leave a spouse passes in parcenary, first, to the person's children and the children's descendants), .002 (establishing that the

7

separate property of a person who dies intestate and leaves a surviving spouse is divided, if the deceased person has one or more children, with one-third to the surviving spouse, two-thirds to the deceased person's children and the children's descendants, with the surviving spouse entitled to a life estate in one-third the deceased person's land, and with the remainder to the deceased person's children and the children's descendants), .003(a), (c) (establishing that the community property of a person who dies intestate and leaves a surviving spouse is divided, if the deceased person is survived by a child or other descendant who is not also a child or other descendant of the surviving spouse, with one-half to the deceased person's children or other descendants and one-half to the surviving spouse).

But Hawk's ultimate entitlement to Quebe's estate is not something that "will be actually determined" by this trial court in this bill-of-review proceeding. *See Austin Nursing Ctr.*, 171 S.W.3d at 849; *Fort Worth Star-Telegram*, 441 S.W.3d at 850. That determination is ultimately left to the Galveston County probate court. We thus do not agree with Hawk that she had a then-existing right or interest that was prejudiced by this annulment proceeding when this annulment proceeding does not determine entitlement to Quebe's estate. *See Frost Nat'l Bank*, 315 S.W.3d at 502; *Rodriguez*, 94 S.W.3d at 798. Simply put, Hawk, who has no rights or interest concerning the Wallace–King marriage, has no personal stake in the annulment proceeding. *See B.I.V.*, 923 S.W.2d at 574; *D.K.W.*, 526 S.W.3d at 625; *see also* Tex. Fam. Code Ann.

§ 6.306(b) ("A suit for annulment is a suit in rem, affecting the status of the parties to the marriage.").

The case of *Caballero v. Vig*, 600 S.W.3d 452 (Tex. App.—El Paso 2020, pet. denied), is instructive. In that case, a wife challenged the denial of her post-trial motion to recuse the trial judge who was presiding over her divorce. *Id.* at 454. In her recusal motion, the wife claimed that the trial judge had been married to one of the attorneys who had represented her husband during the divorce trial although the wife noted that the trial judge's marriage to the attorney had been annulled. *Id.* The wife argued that the annulment of the trial judge's marriage was void because the petition seeking annulment "did not set forth a valid ground for an annulment" in the petition and because "the associate judge who signed [the annulment] did not have the authority to do so . . . ." *Id.* at 455. The wife further argued that because the annulment was void, the trial judge and her husband's attorney were still married, and, thus, the trial judge should be recused. *Id.* at 455–56. The trial judge declined to grant the recusal motion and referred it to the regional presiding judge, who denied the motion. *Id.* at 456.

On appeal, the El Paso Court of Appeals noted, "It is well-established that an individual who is not a party to a final judgment lacks standing to collaterally attack the judgment, unless the individual can establish [that his or her] interests are directly and necessarily affected by the judgment itself." *Id.* at 459. The court further noted that "[h]aving an 'interest affected by the judgment' means having an interest in the

9

subject matter to which the judgment relates." *Id.* (quoting *Grynberg v. Christiansen*, 727 S.W.2d 665, 666 (Tex. App.—Dallas 1987, no writ)). The court cited several cases holding that "a non-party to a divorce proceeding lacks standing to collaterally attack a divorce decree where the individual had no pre[-]existing interest in the divorce proceeding itself." *Id.* (first citing, among others, *Gilliam v. Riggs*, 385 S.W.2d 444, 446–47 (Tex. App.—Beaumont 1964, writ dism'd w.o.j.) (holding that appellant, who was not a party to a divorce proceeding and was unable to demonstrate that he had an interest in the divorce, had no right to challenge the validity of a divorce judgment); then citing *Perry v. Copeland*, 323 S.W.2d 339, 344 (Tex. App.—Texarkana 1959, writ dism'd) (holding that daughter had no right to collaterally attack her father's divorce decree); and then citing *Kieke v. Cox*, 300 S.W.2d 309, 311 (Tex. App.—San Antonio 1957, no writ) (holding that second husband of a party to a divorce judgment that was regular and final on its face lacked sufficient interest to collaterally attack the divorce judgment)). Ultimately, the court did not find any evidence in the record to support a finding that the wife "had any pre-existing or direct interest in the judge's annulment proceedings that would give her standing . . . ." *Id.* at 460. Thus, the court determined that the wife lacked standing, and it affirmed the trial court's judgment. *Id.*

Instead of relying on *Caballero*, Hawk points us to *In re O'Quinn*, 355 S.W.3d 857 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding [mand. denied]). In that case, the decedent's will devised the residue of his estate to a foundation. *Id.* at 859. The

10

foundation intervened in the decedent's ongoing probate case and sought a declaration that the decedent was not married at the time of his death. *Id.* at 860. A woman claiming to be the decedent's common-law wife filed a suit against the executor of the decedent's estate and sought a declaration that she was the decedent's common-law wife at the time of his death. *Id.* That suit was later transferred to the probate court and consolidated with the probate litigation. *Id.* at 861. The purported common-law wife then filed a plea to the jurisdiction and a motion to strike the foundation's petition in intervention, arguing that the foundation lacked standing to intervene in the probate proceeding. *Id.* The trial court denied her plea to the jurisdiction and motion to strike, and the purported common-law wife sought mandamus relief. *Id.*

In denying mandamus relief, the court of appeals noted that in order to intervene in a lawsuit, an intervenor must have a justiciable interest that is "such that if the original action had never been commenced, and [the intervenor] had first brought it as the sole plaintiff, [the intervenor] would have been entitled to recover in his own name . . . at least . . . a part of the relief sought in the original suit." *Id.* at 862 (citing *In re Union Carbide*, 273 S.W.3d 152, 155 (Tex. 2008) (orig. proceeding)) (internal quotations omitted). With that law in mind, the court of appeals held that the foundation had standing to intervene because it had the ability to pursue its own claims for declaratory relief under Section 37.005(3) of the Texas Civil Practice and Remedies Code, which allows a devisee to seek a declaration to determine any

11

question arising in the administration of an estate. *Id.* at 865–66; *see* Tex. Civ. Prac. & Rem. Code Ann. § 37.005(3). The court of appeals held that because the foundation "may seek declaratory relief under this section, the trial court did not abuse its discretion in denying [the purported common-law wife's] . . . plea to the jurisdiction[] and motion to strike the [f]oundation's petition in intervention." *O'Quinn*, 355 S.W.3d at 866.

*O'Quinn* is distinguishable for two reasons. First, the intervention in *O'Quinn* took place in the probate court—the very court tasked with determining the entitlement to the decedent's estate. *Id.* at 860. Here, in contrast, Hawk has filed her petition for bill of review in the Wichita County trial court, which is not tasked with determining the entitlement to Quebe's estate. Second, the intervenor in *O'Quinn* was entitled to bring suit under Section 37.005(3) of the Texas Civil Practice and Remedies Code because the foundation was a devisee that sought a determination of a question arising in the administration of an estate. *Id.* at 865–66; *see* Tex. Civ. Prac. & Rem. Code Ann. § 37.005(3). Here, in contrast, Hawk has no statutory right to challenge an annulment of a marriage to which she was not a party. *O'Quinn* is thus inapplicable to the case before us.

Just as the wife in *Caballero* did not have any right or interest in the judge's annulment proceeding, Hawk does not have any right or interest in the annulment of the Wallace–King marriage. *See* 600 S.W.3d at 460. The right and interest that Hawk claims is present here—her entitlement to a certain percentage of Quebe's estate—is

12

something that is left to be determined by the Galveston County probate court, not the trial court in this annulment proceeding. Accordingly, we hold that Hawk lacks standing to challenge the annulment, and we overrule her first issue. *See Frost Nat'l Bank*, 315 S.W.3d at 502; *Caballero*, 600 S.W.3d at 459–60; *Rodriguez*, 94 S.W.3d at 798.

Because Hawk's first issue is dispositive of the appeal, we need not reach her second[3] and third issues.[4] *See* Tex. R. App. P. 47.1; *Binzer v. Alvey*, 359 S.W.3d 364, 367 (Tex. App.—Fort Worth 2012, pet. denied).

---

[3]As noted above, Hawk argues in her second issue that we should not consider any new arguments and authorities contained in Wallace's trial brief. Because Hawk's attorney announced that Hawk was "ready to proceed" at the hearing on the plea to the jurisdiction and because Hawk did not request a continuance of that hearing in light of the trial brief, we are not constrained from considering it. *See Abdullah v. Amreit SPF Shadow Creek, LP*, No. 01-12-01163-CV, 2014 WL 60711, at *2 (Tex. App.—Houston [1st Dist.] Jan. 7, 2014, no pet.) (mem. op.) ("[The appellant] received actual notice of [the appellee's] motion for summary judgment four days before the hearing. He appeared at the hearing and did not object in writing to the tardy notification or file a motion for continuance. Therefore, he waived any challenge for lack of timely notice."). But in any event, we have confined our analysis to the issue of standing—the issue that was raised in Wallace's plea to the jurisdiction. And, of course, standing may be raised at any time, even for the first time on appeal. *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018).

[4]As noted above, Hawk argues in her third issue that even if we were to consider the new arguments contained in Wallace's trial brief—the chief of which concerned whether Hawk could meet the required elements of a bill of review—the new arguments are not a proper challenge to Hawk's standing and that, in any event, Hawk can meet the requirements of a bill of review. Because we have confined our analysis to the issue of standing, we need not reach this issue. *See* Tex. R. App. P. 47.1. To that end, Hawk has filed an "Opposed Motion to Supplement the Appellate Record" to provide evidence relating to her argument that she can meet the requirements of a bill of review. Because we do not reach this issue, we deny Hawk's motion. Similarly, in Wallace's brief, Wallace asks that we take judicial notice of certain filings in the Galveston County probate court that supposedly support her

## IV. CONCLUSION

Having overruled Hawk's first issue, which is dispositive of the appeal, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered:  January 6, 2022

---

argument that Hawk cannot meet the requirements of a bill of review.  Again, because we do not reach this issue, we deny Wallace's request to take judicial notice of these filings.  Finally, in a postsubmission brief, Wallace points out that the petition for bill of review was not verified and that, as such, we should affirm the trial court.  We do not reach that issue because our holding that Hawk lacks standing is dispositive of this appeal.

14