**AFFIRM; and Opinion Filed August 21, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

___

**No. 05-17-00321-CV**

___

**CURTIS C. PENNINGTON, Appellant**
**V.**
**JOHN P. FIELDS, KYLE B. PHILLIPS,**
**ADVANTAGE MARKING AND LABELING, INC.,**
**MICHAEL J. COLLINS, AND THE COLLINS LAW GROUP, Appellees**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-12400**

# MEMORANDUM OPINION

Before Justices Francis, Brown, and Stoddart
Opinion by Justice Brown

Appellees John P. Fields, Kyle B. Phillips, and Advantage Marking and Labeling, Inc. sued appellant Curtis C. Pennington seeking declaratory relief. Pennington filed counterclaims against Fields and Phillips and brought a third-party action against appellees Michael J. Collins and the Collins Law Group. All claims were resolved on the appellees' motions for summary judgment. The trial court granted Fields, Phillips, and Advantage declaratory relief and ordered that Pennington take nothing on his counterclaims and third-party claims. In this appeal, Pennington raises thirteen issues in which he contends the trial court erred in granting summary judgment. We affirm.

## BACKGROUND

Pennington, Fields, and Phillips are the only shareholders of Advantage Marking and Labeling. They each own one third of Advantage's outstanding stock. Pennington was a founding member of Advantage and until 2012 was its president and a member of its board of directors.

In May 2012, Fields and Phillips hired attorney Collins and his firm the Collins Law Group (collectively referred to as "Collins") to represent them in their individual capacities as shareholders and directors of Advantage. They sought advice regarding the corporate governance of Advantage. On June 27, 2012, Fields and Phillips called a special meeting of the board of directors to remove Pennington from the office of president. In December 2012, Pennington was removed from the board of directors.

In a previous lawsuit filed in July 2012, also in the 162nd District Court in Dallas County, Pennington sued Fields, Phillips, and Advantage alleging minority shareholder oppression. Advantage filed a counterclaim for conversion. Pennington later nonsuited his claim, but Advantage's counterclaim was tried to the court. In August 2013, the trial court rendered a take-nothing judgment in favor of Pennington.

In October 2013, Fields, Phillips, and Advantage initiated the instant litigation against Pennington. They sought declaratory relief. Pennington, both individually and derivatively on behalf of Advantage, counterclaimed against Fields and Phillips and brought third-party claims against Collins. Pennington's counterclaims against Fields and Phillips were for the appointment of a receiver over Advantage under chapter 11 of the business organizations code, breach of fiduciary duty, conspiracy, and misappropriation and conversion of corporate funds. Pennington's third-party claims against Collins were for legal malpractice, breach of fiduciary duty, and

conspiracy. Pennington alleged Fields, Phillips, and Collins conspired with each other to commit breach of fiduciary duty.

The appellees filed various motions for summary judgment. Fields, Phillips, and Advantage filed a motion for partial summary judgment on some of their requests for declaratory relief, one of which involved res judicata. As counter-defendants, Fields and Phillips filed a traditional and no-evidence motion for summary judgment. They asserted Pennington's claims against them were barred by res judicata and also asserted Pennington had no evidence of certain elements of his claims against them and no evidence of any injury to Advantage that would support any derivative claim. Collins filed a traditional and no-evidence motion for summary judgment on Pennington's claims against him. Among other things, Collins asserted he was entitled to judgment as a matter of law because he never provided legal services to Pennington and owed him no legal duty. Collins also filed a supplemental no-evidence motion on grounds Pennington had no evidence of damages.

After a hearing on the motions for summary judgment, the trial court signed four orders on December 21, 2016. By these orders, the trial court respectively: (1) granted Fields and Phillips's traditional motion on res judicata grounds and granted their no-evidence motion as to Pennington's claims on all grounds except for damages; (2) sustained Fields, Phillips, and Advantage's objections to Pennington's summary judgment evidence; (3) granted Collins's motion for summary judgment without specifying the grounds; and (4) granted Fields and Phillips's motion for partial summary judgment on res judicata grounds and on three of their requests for declaratory relief. After Fields and Phillips nonsuited unresolved requests for declaratory relief, the trial court rendered a final judgment. In its judgment, the court ordered that Pennington take nothing on his claims against Fields, Phillips, and Collins. The court also ordered that: (1) the decision to remove Pennington from his positions as officer and director of Advantage did not violate any agreement

or understanding between Advantage's shareholders; (2) a Cross Purchase Agreement dated November 21, 2006, is valid and enforceable; and (3) Advantage is within its authority to prohibit the recording of any shareholder or board of directors meetings.

## STANDARD OF REVIEW

In this appeal, Pennington raises thirteen issues challenging the trial court's summary judgment. We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The standards for reviewing both traditional and no-evidence motions for summary judgment are well established. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985). A trial court must grant a traditional motion for summary judgment if the moving party establishes that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Nixon,* 690 S.W.2d at 548–49; *see* TEX. R. CIV. P. 166a(c)*.* A no-evidence summary judgment motion is essentially a motion for a pretrial directed verdict. *Timpte Indus.*, 286 S.W.3d at 310. To defeat a no-evidence motion for summary judgment, the nonmovant is required to produce evidence that raises a genuine issue of material fact on each challenged element of its claim. *Rico v. L-3 Commc'ns Corp.*, 420 S.W.3d 431, 438 (Tex. App.—Dallas 2014, no pet.); *see* TEX. R. CIV. P. 166a(i). We consider the evidence in the light most favorable to the nonmovant. *Rico*, 420 S.W.3d at 438. A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.* at 601. However, when the evidence is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Id.*

–4–

We first address the trial court's decision to grant counter-defendants Fields and Phillips's no-evidence motion for summary judgment on each of Pennington's counterclaims against them. In five issues, numbered six through ten, Pennington contends the trial court erred in finding there was no genuine issue of material fact regarding his breach of fiduciary duty claim, his claim for misappropriation and conversion of corporate funds, his request for a receiver, his conspiracy claim, and whether there was injury to Advantage. Pennington contends he produced "ample evidence" sufficient to raise a genuine issue of material fact on each of his claims against the two other Advantage shareholders. In his response to the no-evidence motion, Pennington relied exclusively on his affidavit to raise fact issues. And in his appellate brief, Pennington likewise relies on his affidavit to show that there are genuine issues of material fact that precluded summary judgment on his claims against Fields and Phillips.

In November 2016, however, Fields, Phillips, and Advantage filed written objections to Pennington's summary judgment evidence. Specifically, they complained of Pennington's affidavit, which was attached to his responses to both Fields and Phillips's motion for summary judgment as counter-defendants and Fields, Phillips, and Advantage's motion for partial summary judgment as plaintiffs. Fields, Phillips, and Advantage objected to virtually all of the statements in the thirty-nine-paragraph affidavit for various reasons, including objections that the statements were conclusory, self-serving, and legal conclusions. The trial court issued an order sustaining Fields, Phillips, and Advantage's objections to Pennington's affidavit.

As pointed out in Fields, Phillips, and Advantage's appellate brief, Pennington does not raise an issue challenging the trial court's ruling on their objections to his affidavit. Pennington contends in his reply brief that although he did not specifically state the trial court abused its

discretion in sustaining the objections to his affidavit, we should liberally construe his brief to find he adequately raised this issue. To show he raised the issue, Pennington references two statements in his opening brief: "the summary judgment record was replete with evidence confirming a genuine issue of material fact," and "[r]ather than credit this evidence and draw all reasonable inferences in [Pennington's] favor, the trial court summarily disregarded such evidence, misread it, or credited it in *Appellees*' favor." These statements do not raise any evidentiary issues, especially since Pennington's opening brief wholly fails to even mention that there were objections to his affidavit and that the court sustained those objections. Liberal construction of a brief does not include creating arguments that could have been raised, but were not. *Powell v. Knipp*, 479 S.W.3d 394, 408 (Tex. App.—Dallas 2015, pet. denied).

Pennington alternatively asks for leave to amend his brief to address whether the trial court abused its discretion in sustaining the objections. We reject this request. An appellant is not permitted to raise an issue for the first time on appeal in a reply brief. *St. John Missionary Baptist Church v. Flakes*, 547 S.W.3d 311, 316 (Tex. App.—Dallas 2018, pet. filed); *see* TEX. R. APP. P. 38.9(b).

Pennington further contends we should consider his affidavit as summary judgment evidence because, although the trial court sustained the objections to it, Fields, Phillips, and Advantage did not move to strike the affidavit from the record and the court did not strike it. He cites no law, and we have found none, for the proposition that under these circumstances the affidavit is still valid summary judgment evidence. Accordingly, we do not consider Pennington's affidavit when reviewing the summary judgment in favor of Fields, Phillips, and Advantage.

Fields and Phillips filed a no-evidence motion for summary judgment in which they identified the elements of Pennington's causes of actions for which they contend no supporting evidence exists. They also asserted Pennington could not recover derivatively under any theory

of liability because he had no evidence of an injury to Advantage.  The trial court must grant a no-evidence motion for summary judgment unless the nonmovant produces summary judgment evidence raising a genuine issue of material fact on the challenged elements.  TEX. R. CIV. P. 166a(i).  Because Pennington offered no competent summary judgment evidence in response to Fields and Phillips's no-evidence motion, the trial court did not err in granting the motion.  *See B.C. v. Steak N Shake Operations, Inc.*, 532 S.W.3d 547, 449 (Tex. App.—Dallas 2017, pet. filed).  We overrule Pennington's six through tenth issues.  As a result, we need not reach Pennington's eleventh issue in which he contends the trial court erred in granting summary judgment on his claims against Fields and Phillips on res judicata grounds.

### ISSUES RELATED TO PLAINTIFFS FIELDS, PHILLIPS, AND ADVANTAGE'S SUMMARY JUDGMENT MOTION

We turn to Fields, Phillips, and Advantage's motion for partial summary judgment on their declaratory judgment action.  In the motion, Fields, Phillips, and Advantage asserted they were entitled to judgment as a matter of law on certain of their requests for declaratory relief.  They also moved for summary judgment on grounds Pennington had no evidence of his affirmative defenses of estoppel and the statute of frauds.  The trial court granted three of their requested declarations.  Pennington challenges two of them in this appeal:  (1) the decision to remove Pennington from his positions as an officer or director of Advantage did not violate any agreement or understanding between Advantage's shareholders; and (2) Advantage is within its authority to prohibit the recording of any shareholder or board of directors meetings.

In issue twelve, Pennington contends Fields, Phillips, and Advantage did not prove as a matter of law they were entitled to declaratory relief.  Pennington does not challenge the merits of the declarations.  He contends Fields, Phillips, and Advantage were not entitled to the declaration that the decision to remove him as officer and director did not violate any agreement between shareholders because there was no justiciable controversy regarding the existence of such an

agreement. He likewise contends there was no justiciable controversy regarding the recording of meetings.

The purpose of the declaratory judgments act is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b) (West 2015). The act is to be liberally construed. *Id.* A declaratory judgment is proper only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Id.* The burden of establishing a justiciable controversy is on the moving party. *Byrd v. Fard*, 539 S.W.2d 213, 215 (Tex. Civ. App.—Dallas 1976, no writ).

Pennington contends that because he did not assert a legal claim founded on the existence or enforceability of an agreement, Fields, Phillips, and Advantage sought an impermissible advisory opinion from the court on whether the decision to remove him as an officer and director violated any agreement. Fields, Phillips, and Advantage presented evidence that in the shareholder oppression lawsuit Pennington filed and later nonsuited, Pennington alleged that it was the "express intention" of Pennington, Fields, and Phillips "to continue orderly management of [Advantage's] business, on a joint basis." Pennington repeated these allegations in his counterclaim in this case against Fields and Phillips, adding that this "intention" was part of his expected return on investment as a shareholder. In his deposition, Pennington testified that it was "understood" or implied "from 24 years of practice" that all Advantage shareholders would be entitled to employment. We reject Pennington's argument that because he did not specifically allege that Fields and Phillips breached an agreement between them, there is no justiciable controversy. Clearly there was a real controversy between the parties related to the existence of

an agreement or understanding about whether Pennington was entitled to continued employment with Advantage.

We turn to the second declaration about the recording of meetings. According to Fields, Phillips, and Advantage's summary judgment evidence, Pennington recorded at least one shareholder meeting in February 2014. In October 2014, the board of directors amended Advantage's bylaws to expressly prohibit shareholders from recording or videotaping meetings without unanimous consent. Pennington's own response to the motion for summary judgment shows there is a real controversy over this issue. He asserted that the prohibition against recording Advantage meetings violates his rights to freedom of speech and association. *See Democracy Coalition v. City of Austin*, 141 S.W.3d 282, 297 (Tex. App.—Austin 2004, no pet.). We overrule Pennington's twelfth issue.

In issue thirteen, Pennington contends the trial court erred in finding there were no genuine issues of material fact regarding his affirmative defenses of estoppel and the statute of frauds. Although this issue is listed in the "Issues Presented" section of Pennington's brief, there is no argument in the brief about why fact issues exist. Every issue presented by a party must be supported by argument and authorities in the party's brief or it is waived. *See* TEX. R. APP. P. 38.1(i); *Gunn v. McCoy*, No. 16-0125, 2018 WL 2994534, at \*20 (Tex. June 15, 2018). We overrule Pennington's thirteenth issue.

### ISSUES RELATED TO COLLINS'S SUMMARY JUDGMENT MOTIONS

Pennington's first five issues relate to the motions for summary judgment filed by Collins. Pennington, individually and derivatively on Advantage's behalf, asserted three claims against Collins—legal malpractice, breach of fiduciary duty, and conspiracy. He alleged Collins committed legal malpractice by, among other things, negligently advising Fields and Phillips to

engage in oppression and breaches of fiduciary duties.  Further, Pennington alleged Collins failed to advise him to protect his interests against the misconduct of Fields and Phillips.

We first address Pennington's individual claims against Collins.  One of Collins's grounds for summary judgment was that he owed no legal duty to Pennington because he never provided legal services to him.  Collins's summary judgment evidence included his affidavit which provided among other things that Pennington never sought to retain Collins to provide legal services and Collins never agreed to represent Pennington.  In issue one, Pennington contends the trial court erred in finding there was no genuine issue of material fact regarding whether Pennington and Collins had an attorney–client relationship.  He contends he produced ample evidence to raise a fact issue and relies on two written agreements, dated June 27, 2012, and July 23, 2012, as well as on Collins's conduct.

The existence of a duty is an element of a legal malpractice claim.  *Rogers v. Zanetti*, 518 S.W.3d 394, 400 (Tex. 2017).  The attorney–client relationship is a contractual relationship that arises from a lawyer's agreement to render professional services to a client.  *Kiger v. Balestri*, 376 S.W.3d 287, 291–92 (Tex. App.—Dallas 2012, pet. denied).  The agreement may sometimes be implied from the parties' conduct.  *Id.* at 292.  But whether an agreement is express or implied, there must be evidence that both parties intended to create an attorney–client relationship.  *Id.*  One party's subjective belief is insufficient to raise a question of fact to defeat summary judgment.  *Id.*

Pennington contends both a June 27, 2012 and a July 23, 2012 agreement expressly create an attorney–client relationship between him and Collins.  On June 27, 2012, the date Pennington was removed as president of Advantage, Advantage hired Collins to represent it.  The agreement provides that Collins's services will include "general corporate matters, including reviewing and revising your existing documents, negotiations with former employees, drafting notices and other corporate legal work as required by the board of directors."  The agreement was signed by Collins

and by Fields as Advantage's president. On July 23, 2012, Collins and Advantage entered into another agreement for legal representation. It is also signed by Collins and by Fields in his capacity as Advantage's president. The agreement references "Representation of Directors" and provides that Collins's services will consist of "general corporate matters, including reviewing and revising your existing documents, negotiations with former employees, drafting notices and other corporate legal work as required by the board of directors."

Pennington contends the June 27 agreement created an attorney–client relationship between him and Collins because of the language it contains about performing work "as required by the board of directors." He contends the July 23 agreement created an attorney–client relationship between him and Collins because it states Collins was representing Advantage's directors. Pennington was on the board of directors until December 2012.

These two agreements do not raise a fact issue regarding the existence of an attorney–client relationship between Pennington and Collins. Both agreements are between Advantage and Collins. A corporation is a legal entity separate and apart from the people who compose it, making it distinct from its stockholders, officers, and directors. *Goeth v. Craig, Terrill & Hale, L.L.P.*, No. 03-00125-CV, 2005 WL 850349, at *5 (Tex. App.—Austin Apr. 14, 2005, no pet.) (mem. op.). Thus, rendering legal services to a corporation does not by itself create privity between the attorney and the corporation's officers, directors, or shareholders. *Id.*; s*ee* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.12(a), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West) (TEX. STATE BAR R. art. X, § 9) ("A lawyer employed or retained by an organization represents the entity."). We disagree with Pennington's argument that Collins was "clearly engaged to represent Advantage's shareholders," including Pennington. Pennington was not named in nor did he sign the agreement. The agreement was clearly between Collins and Advantage. Evidence of an agreement between Collins and Advantage is no evidence of an

attorney–client relationship between Collins and one of Advantage's directors or shareholders. *See also Gamboa v. Shaw*, 956 S.W.2d 662, 665 (Tex. App.—San Antonio 1997, no writ) (deviating from rules of privity would result in attorneys owing duty to each shareholder of any corporation they represent).

In the absence of an express agreement, Pennington contends alternatively there was an implied agreement for legal representation. Although an attorney–client relationship may be implied from the actions of the parties, the parties must manifest an intention to create an attorney–client relationship. *Gills v. Provost & Umphrey Law Firm, LLP*, No. 05-13-00892-CV, 2015 WL 170240, at *10 (Tex. App.—Dallas Jan. 14, 2015, no pet.). Whether there was a meeting of the minds must be based on an objective standard, examining what the parties did and said and not their alleged subjective states of mind. *Id.*

Pennington relies on his affidavit to prove this implied agreement and also relies on Collins's deposition testimony. We note the record contains two affidavits from Pennington, one dated October 6, 2016, and one dated November 11, 2016. Pennington attached the October 6 affidavit to his response to Collins's motion for summary judgment and the November 11 affidavit to his response to the other appellees' motions for summary judgment. Although Collins objected to portions of the October 6, 2016 affidavit, the trial court did not rule on the objections. Thus, our previous determination that the November 11 affidavit is not competent summary judgment evidence has no impact on the summary judgment between Pennington and Collins.

Both sides discuss the case of *MacFarlane v. Nelson* from the Third Court of Appeals. In that case, the court of appeals noted that when a lawyer represents a small entity with extensive common ownership and management, difficulties can arise in determining the existence of an attorney–client relationship. *MacFarlane v. Nelson*, No. 03-04-00488-CV, 2005 WL 2240949, at *4 (Tex. App.—Austin Sept. 15, 2005, pet. denied) (mem. op.). The opinion listed several factors

–12–

to consider in determining whether a lawyer for the entity also represents an individual owner: (1) whether the lawyer affirmatively assumed the duty of individual representation; (2) whether the owner had independent representation; (3) whether the lawyer previously represented the owner on a personal basis; (4) and whether the evidence demonstrates the owner's reliance on or expectations of the lawyer's separate representation. *Id.* An attorney–client relationship is not created with the individual owner simply because the owner discusses matters with the lawyer that are relevant to both the owner's and the entity's interests. *Id.*

Pennington asserts these factors weigh in favor of finding an attorney–client relationship between him and Collins. We disagree. Pennington met Collins on the day he was removed as Advantage's president. Thus, Collins had not previously represented Pennington. Although Pennington did not have independent representation at that time, he retained his own legal counsel shortly after the June 27 meeting. Pennington asserts he believed Collins was "advising him and representing his interests" because Collins represented to Pennington that Pennington's interests were not adverse to Fields's and Phillips's. He contends Collins admitted he was representing all three directors. To demonstrate this, he relies on Collins's deposition testimony. In his deposition, Collins was asked if he thought he was helping Pennington. Collins stated he was trying to "find a solution for all of the parties to work together" and if it worked out, it would have helped Pennington. His goal was to help his clients, who were Fields and Phillips and later Advantage. Pennington's summary judgment evidence does not show that Collins affirmatively assumed a duty to represent Pennington individually. Evidence Pennington had a subjective belief that Collins was representing him is insufficient. Whether there was a meeting of the minds about representation must be based on an objective standard, and there is no objective evidence Collins intended to create an attorney–client relationship with Pennington. An attorney–client relationship

–13–

was not created between Collins and Pennington simply because Collins discussed matters with Pennington that were relevant to both Pennington's and Advantage's interests.

The summary judgment evidence in this case fails to raise a fact issue regarding the existence of an attorney–client relationship between Pennington and Collins. Resolution of this issue also resolves Pennington's challenge to the summary judgment on his individual claim for breach of fiduciary duty, which was based on the fiduciary relationship between lawyer and client. Because there is no evidence of an attorney–client relationship between Collins and Pennington, there likewise is no evidence Collins owed Pennington a fiduciary duty. *See Kiger*, 376 S.W.3d at 290. We overrule Pennington's first issue. We need not reach Pennington's second issue in which he challenges a separate ground for summary judgment on his breach of fiduciary duty claims.

In his third issue, Pennington challenges the summary judgment on his conspiracy claim against Collins. Pennington alleged that Collins conspired with, or aided and abetted, Fields and Phillips in committing breach of fiduciary duty. Collins moved for summary judgment on grounds that he could not be liable for conspiracy because no underlying tort was committed. Pennington contends the trial court erred in finding there was no genuine issue of material fact regarding whether Fields and Phillips owed a fiduciary duty to Pennington.

Conspiracy is a derivative tort because a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. *West Fork Advisors, LLC v. SunGard Consulting Servs., LLC*, 437 S.W.3d 917, 920 (Tex. App.—Dallas 2014, pet. denied). When the underlying tort fails, there can be no independent liability for conspiracy. *Id.* We have upheld the trial court's judgment that Pennington take nothing on his breach of fiduciary claim against Fields and Phillips. Because there is no underlying tort, the trial court did not err in granting summary judgment for Collins on

Pennington's conspiracy claim against him. *See Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 (Tex. 2001). We overrule Pennington's third issue.

We turn to Pennington's fourth issue, which involves his derivative claims on behalf of Advantage against Collins. In the issue, Pennington responds to Collins's claim in his no-evidence motion that Pennington had no evidence of any damages to Advantage. Pennington contends he produced ample evidence of damages suffered by Advantage. Yet to show Advantage's damages, he refers us only to the allegations in his live pleading. Pleadings are not competent summary judgment evidence. *Chambers v. Allstate Ins. Co.*, No. 05-15-01076-CV, 2016 WL 3208710, at *11 (Tex. App.—Dallas June 8, 2016, pet. denied) (mem. op.). We overrule Pennington's fourth issue.

In his fifth issue, Pennington contends the trial court erred in finding there was no genuine issue of material fact regarding his individual damages. As we have already disposed of Pennington's individual claims against Collins, we need not reach this issue.

We affirm the trial court's judgment.


/Ada Brown/
ADA BROWN
JUSTICE


170321F.P05


–15–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CURTIS C. PENNINGTON, Appellant

No. 05-17-00321-CV          V.

JOHN P. FIELDS, KYLE B. PHILLIPS,
ADVANTAGE MARKING AND
LABELING, INC., MICHAEL J.
COLLINS, AND THE COLLINS LAW
GROUP, Appellees

On Appeal from the 162nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-13-12400.
Opinion delivered by Justice Brown,
Justices Francis and Stoddart participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees JOHN P. FIELDS, KYLE B. PHILLIPS, ADVANTAGE
MARKING AND LABELING, INC., MICHAEL J. COLLINS, and THE COLLINS LAW
GROUP recover their costs of this appeal from appellant CURTIS C. PENNINGTON.

Judgment entered this 21st day of August, 2018.